**Hayden F. HENRY**

**v.**

**The S. S. MOUNT EVANS, her boilers, engines, tackle, apparel and furniture, and Mt. Evans Steamship Corporation, American Tramp Shipping Development Corporation, and Cargo Tankship Management Corporation.**

**Adm. No. 4494.**

United States District Court
D. Maryland.

March 20, 1964.

Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., and Sidney Blum, Baltimore, Md. (John Dorfman, Philadelphia, Pa., and John P. Wade, Baltimore, Md., advocates), proctors for libelant.

Ober, Williams & Grimes, Baltimore, Md. (Southgate L. Morison, Baltimore, Md., advocate), proctors for Blix Steamship Co. mortgagee.

**THOMSEN, Chief Judge.**

 The exceptions to the libel in rem against the S. S. Mount Evans raise the question whether the alleged facts support the charge of unseaworthiness. The Court is not now concerned with the allegations of negligence made against the other respondents.[1]

The following facts are taken from the libel and libelant's brief. On April 19, 1961, while the Mount Evans was docked at Rio de Janeiro and libelant was standing a gangway watch aboard the vessel, an open-topped truck owned by a ship chandler arrived at the side of the vessel bearing stores of vegetables for the ship's crew. The chief mate ordered libelant to go onto the truck and manually unload it. The tailgate of the truck was several inches from the vessel, and the unloading was accomplished by libelant passing the boxes of vegetables to his shipmates standing on the ship at the head of the gangway. The floor of the truck was concealed by wrappers and other debris and not visible to libelant or anyone looking at the floor. While libelant was stepping towards the vessel with a box of vegetables, his left leg went through an existing hole in the floor of the truck, and he was injured.

Libelant cites Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963). That case dealt with claims of negligence and unseaworthiness made by a longshoreman who slipped on loose beans which had spilled onto the dock from broken and defective bags while they were being unloaded from the ship. Holding that the use of the defective cargo containers constituted unseaworthiness, the Court said "the seaworthiness doctrine * * * is in essence that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reason-

---

1. Recovery in rem against the vessel must be based upon unseaworthiness. Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827 (1928).

ably fit for the purpose for which they are to be used." The Court also held "that the duty to provide a seaworthy ship and gear, including cargo containers, applies to longshoremen unloading the ship whether they are standing aboard ship or on the pier."

That decision is, of course, binding on all federal courts, but it does not go so far as to hold that the warranty of seaworthiness extends to vehicles or other equipment which have not been and are not intended to be brought on board the ship. In Fredericks v. American Export Lines, 2 Cir., 227 F.2d 450 (1955), the longshoreman plaintiff was standing on a skid or platform, assisting in the transfer of cargo from a ship to the upper story of a pier, when one of the iron supports of the skid broke, causing the plaintiff to fall onto the stringpiece of the pier. Recovery against the manufacturer of the skid for negligence was allowed; but the claims against the owner of the vessel were disallowed. Answering the plaintiff's contention that cargo could not be safely transferred from aboard ship to the upper story of the pier without a skid, the Court said: "But tools or equipment do not become part of a lessee's plant merely because such tools or equipment are indispensable to the work that an independent contractor has agreed to perform." After noting that "in recent years the warranty of seaworthiness has been held by the Supreme Court to cover a pretty wide territory," [2] the Court said: "nevertheless, here the injury was incurred by a longshoreman standing on a pier, as a result of the failure of a defective appliance located on the pier and furnished by a subcontractor. No decision so far has extended the sweeping protection of the seaworthiness doctrine to this situation." That is still the law.

It is true, as libelant argues, that when equipment is brought aboard the ship, it is immaterial that the instrumentality causing the injury is not owned or controlled by the shipowner.[3] But the fact that a seaman is sent to work on a dock, or on a truck, or in a warehouse, or is sent by automobile to a store to buy something for the ship, does not make the dock, the truck, the warehouse or the automobile an extension of the ship; the warranty of seaworthiness does not extend to all equipment which is on or part of the dock, the truck, the warehouse or the automobile. In the present case the truck was neither a part of the ship's equipment nor a defective cargo container. It had never been and was not intended to be brought on board the ship.[4]

Libelant argues that the truck was a "defective link in the passage of stores to the vessel", citing DiSalvo v. Cunard S.S. Co., S.D.N.Y., 171 F.Supp. 813 (1959), where a defective baggage chute, belonging to the shipowner, running from the pier onto the ship, was treated as "ship's equipment". Assuming that DiSalvo was properly decided, the line should be drawn between that case and this, for the reasons stated by the Supreme Court in Gutierrez and by the Second Circuit in Fredericks, quoted above.

Libelant's last point is that when the chief mate ordered him to go aboard a truck in a foreign port without first inspecting the truck, the chief mate exposed libelant to an unnecessary and dangerous risk, and that this act of the chief mate was an act of incompetence by which the vessel was rendered unseaworthy. No authority cited or found supports such a contention, and it is without merit. Cf. Boudoin v. Lykes

2. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120.

3. Alaska Steamship Co. Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954); Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L. Ed. 1120 (1954).

4. Fredericks v. American Export Lines, 2 Cir., 227 F.2d 450 (1955).

Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955); Spellman v. American Barge Line Co., 3 Cir., 176 F.2d 716 (1949).

The exceptions are hereby sustained and the libel in rem against the Mount Evans is hereby dismissed.