Walter M. ALLEN

v.

**UNION BARGE LINE CORPORATION**
**and the M/V MARINER.**

No. 739.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

March 30, 1965.

John L. Avant, Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, La., for libelant.

George B. Matthews, Lemle & Kelleher, New Orleans, La., for respondents, Union Barge Line Corp. and Aetna Cas. and Sur. Co.

George V. Baus, Adams & Reese, New Orleans, La., for respondent, Dravo Corp. and intervenor, Aetna Cas. and Sur. Co.

WEST, District Judge.

Libelant, Walter M. Allen, was employed by Dravo Corporation in a capacity which he described as a "handy man," but which actually appears to be that of a shipfitter. Dravo is a corporation engaged in the business of performing maintenance work, repair work, drydocking, etc. of seagoing and other vessels. On March 23, 1963, while libelant was working aboard the M/V MARINER, a towboat owned and operated by respondent, Union Barge Line Corporation, he was injured when a scaffold upon which he was working collapsed. He brings this libel against the Union Barge Line Corporation, as the owner of the M/V MARINER, and also against the M/V MARINER in rem, alleging that his injuries were caused by the negligence of Union and by the unseaworthiness of the vessel, M/V MARINER. He also libels Aetna Casualty and Surety Company as the liability insurer of Union, and as the liability insurer of the directors, supervisors, stockholders, agents, employees, and representatives of Dravo Corporation, whom he contends were individually guilty of negligence proximately causing his injuries. Union answered admitting ownership of the MARINER; denying negligence; denying that the MARINER was in any way unseaworthy; and alleging that the accident was caused entirely by the fault and negligence of libelant. Aetna answered admitting its insurance coverage of both Union and Dravo; denying negligence on the part of Union; denying that the MARINER was unseaworthy; and alleging that the libelant had assumed the risk of his employment and that the accident was caused by his own negligence. As insurer of Dravo, Aetna also contends that libelant's exclusive remedy lies under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that there was no independent negligence on the part of the directors, supervisors, stockholders, agents, employees, and representatives of Dravo causing or contributing to the cause of libelant's injury.

Union, and its insurer, Aetna, also filed a petition under the 56th Admiralty Rule against Dravo, seeking indemnity for any sums that they, or either of them, might be ordered to pay libelant as a result of this accident on the ground that if the MARINER was unseaworthy she was unseaworthy only because Dravo failed to perform its contract of repair in a workmanlike manner. Dravo answered the 56th Rule petition, denying all allegations of negligence and alleging that it performed its work on the MARINER in a workmanlike manner. Aetna then, as Dravo's compensation insurer, filed an intervening libel, seeking reimbursement from libelant, Union and the MARINER, for all money paid to libelant under the Longshoremen's and Harbor Workers' Compensation Act in the event libelant is granted recovery in this suit. In this posture, and after pretrial conference, the case came on for trial on November 2, 1964, following which briefs were filed by counsel for all parties. Now, after carefully considering the record herein, the evidence adduced at trial, and the arguments and briefs of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On March 16, 1963, the M/V MARINER, a towboat owned and operated by respondent, Union Barge Line Corporation, arrived at the repair facilities of Dravo Corporation on the Mississippi River at Baton Rouge, Louisiana, to receive its routine annual maintenance servicing which Dravo had contracted to perform. Included among the items of maintenance and repair to be performed by Dravo were such things as cleaning gate valves; fabricating a steel grating walkway at the after end of the pilot-house; fabricating and installing pipe storage rack in the shaft alley; installing grab rails in showers; installing new towing kevels; washing down engine room; removing accumulated sludge; installing rubbing bars on port and starboard stern; installing a closed jacket water cooling system; and removing propeller shafts and installing new sleeves thereon.

2. Dravo contracted to perform all work called for by its contract with Union in "a good and workmanlike manner."

3. The M/V MARINER arrived at the Dravo repair facility on March 16, 1963, and was placed in a floating dry-dock on March 18, 1963. She was returned to the water on March 25, 1963, and left the repair yard, with all repairs and maintenance completed on April 4, 1963.

4. Libelant boarded the M/V MARINER on March 23, 1963, as an employee of Dravo. He was to assist in the removal of the propeller shafts by removing the couplings therefrom.

5. The M/V MARINER is a 192 foot long diesel powered push boat. She has twin screws with her two shafts separated by a centerline bulkhead. This bulkhead has an opening at each end to provide access from one shaft alley to the other. There was, at the time of the accident, no walkway along the shafts. To inspect the shafts it was necessary to walk along the hull braces which were four or five feet below the level of the shafts. Each shaft had three carrier bearings in the shaft alley and one bearing at the bulkhead separating the engine room from the shaft alley. The shafts are approximately 13 inches in diameter, and each half of the couplings or bearings weigh approximately 350 pounds.

6. While either removing or replacing a coupling from the shaft, libelant was working on a scaffold, which had been erected to facilitate working on the shaft, when it collapsed causing him to fall four or five feet to the bottom of the hull where he landed astraddle of an angle iron brace, causing him severe injury.

7. The scaffolding was furnished and erected in the shaft alley by Dravo prior to its use by libelant.

8. The scaffolding was defective in that one of the 2 x 4's used to support the plywood platform had a large knot in it and it was because of this defective

2 x 4 that the scaffold collapsed causing libelant's injury.

9. The defect in the lumber would not have been noticeable even by reasonable inspection, and libelant was not guilty of any negligence whatsoever which in any way caused or contributed to the cause of this accident.

10. The work being done on the M/V MARINER at the time of this accident was nothing but usual, routine maintenance work such as is performed on the vessel every year or two. The performance of this work did not take the vessel out of navigation.

11. While it is true that the entire crew did not remain aboard during the repair period, the entire engine room crew and the galley crew did remain aboard and did perform their regular duties during the entire time.

12. The defective scaffolding from which the libelant fell and injured himself created an unseaworthy condition aboard the M/V MARINER, which unseaworthy condition was caused entirely by the negligence of Dravo Corporation resulting in their failure to perform their work under their contract with Union in a workmanlike manner.

13. Respondent, Union Barge Line Corporation, was not guilty of any negligence causing or contributing to the cause of this accident.

14. Libelant was 40 years old at the time of his injury. He had a congenital defect in his spine at the fifth lumbar interspace, which defect, in all probability, made him more susceptible to injury than he would otherwise have been.

15. About 14 years prior to this accident, in 1950, while working for an oil well drilling company, libelant injured his back and was more or less incapacitated for about 17 weeks. But the injury suffered by him at that time was to the upper back, in the cervical region. He has never before had any trouble with his lower back.

16. Libelant's prior work record was not consistent with prior lower back trouble. He has, over the past years, worked regularly as a pipefitter, mechanic, welder, operator of heavy equipment, truck driver, etc. While at the time of his accident he was described as doing the work of a shipfitter, he himself described his work as that of a "handy man," consisting of mechanical work, electrical work, crane operator, or "anything else assigned to him."

17. As a direct and proximate result of this accident, libelant suffered what is, in all probability, according to the overwhelming weight of the medical testimony, a herniation of the fourth lumbar disc with a compression of the fifth lumbar nerve. He is, and has been since the occurrence of this accident, unable to do any heavy manual work, and is unable to do the type of work which he has done for a living for the past 14 years.

18. During libelant's employment with Dravo, his average income from his employment was something over $5,000 per year. He was earning $2.70 per hour at the time of his injury. Since this accident he has been unemployed, his only income being $1,850 paid by Aetna Casualty and Surety Company, as insurer of Dravo Corporation, under the Longshoremen's and Harbor Workers' Compensation Act. His medical expenses to date, in the total sum of $482.46, have also been paid by Aetna, as insurer of Dravo, and pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act.

19. Libelant has refused, and still refuses to undergo surgery for the correction of the disc and nerve injury despite the fact that such surgery is recommended by all doctors concerned.

20. Statistics establish the fact that between 60 and 70 per cent of those undergoing similar surgical procedures to those recommended in this case fully recover from their disability while approximately 10 per cent will experience no improvement in their condition at all after surgery. The remainder will have a limited amount of disability insofar as performing heavy manual work even after surgery. There have been isolated cases

where, after such surgery, the patient has been worse off than he was before surgery, but this is extremely rare. According to all of the medical testimony, the odds are overwhelmingly in favor of libelant's condition being substantially improved if the recommended surgery is performed. The surgical procedure recommended, i. e., repair of the ruptured intervertebral disc, together with a spinal fusion, is not an unusual or rare procedure but is one that is being performed daily, with increasing frequency throughout the world. Even though libelant refuses, at this time, to submit to such surgery, he does indicate, and the Court believes, that he will, if his back trouble continues, submit to such procedures for he says that he will only submit to surgery "as a last resort."

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter under its admiralty and general maritime jurisdiction, and venue is properly laid in the Eastern District of Louisiana.

■ 2. The warranty of seaworthiness owed by a shipowner to the members of its crew is a non-delegable duty and is extended also to longshoremen engaged in the loading and unloading of the vessel, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). It is also extended to shore-based workers doing the type of work aboard a vessel in navigation which is customary or traditionally done by seamen, even though they are employed by third parties such as shipyards, marine contractors, etc. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L. Ed.2d 524 (1959); Pinion v. Mississippi Shipping Co., 156 F.Supp. 652 (E.D.La. 1957).

■ 3. To determine whether or not the warranty of seaworthiness is extended to a shore-based worker who performs labor on a ship which is not ready for a voyage but is docked in a private shipyard for repairs, overhaul, or maintenance, the focus should be upon the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done rather than upon the specific type of work that each shore-based workman is doing on shipboard at the moment of injury. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959). The character of the work to be done by the shipyard must be considered as must the presence or absence of a crew performing the customary work of seamen on shipboard and the consequent measure of control or lack of control by the shipyard over the vessel as a whole. Lawlor v. Socony-Vacuum Oil Co., 275 F.2d 599, 84 A.L.R.2d 613 (CA 2 1960) cert. den. 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728 (1960).

■ 4. After considering all of these elements, the Court concludes as a matter of law, that in view of the pattern of the repairs and the nature of the work to be done by both Dravo and the engineering crew aboard, the M/V MARINER was a vessel in navigation at the time of libelant's injury; that libelant was performing work traditionally performed by seamen (removing a bearing from a propeller shaft); and that he was, at the time of his injury, entitled to the warranty of seaworthiness. Lawlor v. Socony-Vacuum Oil Co., supra.

5. The defective lumber used in the scaffold on which libelant was required to work caused the M/V MARINER to be unseaworthy and the unseaworthy condition was the proximate cause of libelant's injury.

■ 6. In view of Union's non-delegable duty to furnish a seaworthy vessel to all to whom the warranty of seaworthiness is extended, Union Barge Line Corporation, as owner and operator of the M/V MARINER at the time of libelant's injury is liable to him for all damages sustained by him as a result of this unseaworthy condition. Ballwanz v. Isthmian Lines, Inc., 319 F.2d 457 (CA 4 1963); Thompson v. Calmar S. S. Corporation, 331 F.2d 657 (CA 3 1964);

Provenza v. American Export Lines, Inc., 324 F.2d 660 (CA 4 1963).

7. Since the Court has found, as a fact, that the unseaworthy condition causing libelant's injury was caused entirely by the failure of Dravo Corporation to perform its work under its contract with Union in a workmanlike manner, Dravo is liable over to Union for the full amount of the award herein made to libelant, together with costs and reasonable attorney fees. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

8. As a matter of law, Aetna Casualty and Surety Company, as intervenor, is entitled to recover from libelant all amounts paid as compensation and for medical expenses to libelant pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act.

9. The award of damages for personal injuries is of necessity somewhat arbitrary and varies greatly with the facts and circumstances of each case. Dark v. Brinkman, 136 So.2d 463 (La. App. 3rd Cir. 1962). In trying to assess the amount of future loss of earnings as well as probable future pain and suffering, the totality of circumstances must be considered. After a careful consideration of all of the factors involved in this case, it is concluded that, as a matter of law, libelant is entitled to recover from Union Barge Line Corporation and Aetna Casualty and Surety Company, in solido, the sum of $45,000 for all elements of damage resulting from this accident, including all past, present and future medical expenses, pain and suffering, disability, loss of earnings, and any and all other damages of any kind resulting from this accident. Judgment will also be rendered herein in favor of Union and its insurer, Aetna, and against Dravo for the full amount of the award hereby made in favor of libelant, together with cost and a reasonable attorney fee, and in the event the amount of the attorney fee cannot be agreed upon by counsel, the question of the amount of the fee will be submitted to the Court for determination. Judgment will be rendered against libelant, Union and the M/V MARINER, and in favor of Aetna as Dravo's compensation insurer, for the total amount of compensation and medical payments made to libelant under the Longshoremen's and Harbor Workers' Compensation Act.

Counsel are requested to submit to the Court a proposed form of judgment to be entered in accordance herewith.