**Melvin McCOWN, Appellant,**

v.

**HUMBLE OIL & REFINING COMPANY,**
**Appellee.**

**No. 12330.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 30, 1968.

Decided Jan. 16, 1969.

Harvey Goldstein, New York City (Ellenson & Fox, Newport News, Va., on brief), for appellant.

John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., William McL. Ferguson, and Ferguson & Harvell, Newport News, Va., on brief), for appellee.

Before CRAVEN and BUTZNER, Circuit Judges, and McMILLAN, District Judge.

BUTZNER, Circuit Judge:

The district court held that Melvin McCown, a shipyard worker, was not entitled to the warranty of seaworthiness and granted summary judgment for Humble Oil & Refining Company, owner of the tanker, ESSO BERMUDA. We affirm because McCown was not performing the traditional work of a seaman when he was injured aboard the ship.

Humble sent the ESSO BERMUDA to the Newport News Shipbuilding & Drydock Company for work that cost $407,194 and required 36 days. During this time, electricity, steam, and fresh water were supplied by the yard. The tanker's boilers were shut down and overhauled. Her main throttle was disassembled and taken ashore for repairs

and replacements. Additional items of work included installation of four soot blowers, installation of a fire fighting system, and repairs to pipes and valves.

The single largest item of work, costing $241,605, involved sandblasting and coating 12 cargo tanks with a comparatively new process developed and specified by Humble. The interior surfaces of the tanks were sandblasted to bare, clean metal. Under conditions of controlled humidity, obtained through the shipyard's dehumidifying equipment, the tanks were then coated with inorganic zinc silicate applied by spraying to a dry film thickness of .005 inches. The coating process was done by shipyard workers using specialized, expensive equipment furnished by the yard. ESSO BERMUDA's equipment was not used, and although some of the crew remained aboard carrying out their duties, none were assigned to the job. The shipyard had exclusive control over the work and its employees. The yard's performance of its contract was subject to approval of Humble's shore-based inspectors.

As his part in the coating process, McCown swept sand that accumulated from sandblasting in the tank to a sand sucking hose. Both the hose and the machine providing suction were owned and operated by the shipyard. McCown was injured when a part of the sand sucking hose fell on him from a beam of the vessel where it had been placed by other shipyard employees. He alleged negligence and unseaworthiness, but he abandoned the negligence count. Both parties filed motions for summary judgment raising the issue of the application of the warranty of seaworthiness.

 Frequently the question of whether a shore-based worker is entitled to the warranty of seaworthiness may involve disputed facts or conflicting inferences which require submission to a jury. If, however, the facts conclusively demonstrate that the worker is not performing a traditional task of a seaman, it is error to submit the issue of unseaworthiness to a jury. United N. Y. & N. J. S. H. Pilots' Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). The facts on which McCown bases his claim are uncontradicted, and there exist no conflicting inferences requiring that the case be submitted to a jury. We find no error in the court's disposition by summary judgment. Cf. Van Horn v. Gulf Atlantic Towing Corp., 388 F.2d 636 (4th Cir. 1968).[1]

 In order for a shore-based worker to recover for injuries caused by unseaworthiness, he must establish that he was doing a seaman's work[2] and that

---

[1]. The fact that both parties move for summary judgment does not establish that there is no issue of fact. 3 Barron & Holtzoff, Federal Practice & Procedure § 1239 (Wright's ed.1958). McCown's counsel, however, advised the trial court of the propriety of deciding the issue by summary judgment. He said:

"Now for the purpose of the argument itself. As the defendant has stated, and we agree with the defendant that there are enough facts, or we believe that there are enough facts, presented to the Court for the Court to make a decision as to whether or not the plaintiff was entitled to the warranty of seaworthiness."

[2]. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). For other cases allowing recovery on the ground that an injured shore-based worker was performing work traditionally done by the ship's crew, see Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Shenker v. United States, 322 F.2d 622 (2d Cir. 1963), cert. denied, American Stevedores v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1964); Lawlor v. Socony-Vacuum Oil Co., 275 F.2d 599, 84 A.L.R.2d 613 (2d Cir.) cert. denied, 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728 (1960). For cases denying recovery on the ground that work performed by an injured shore-based worker was not the type traditionally done by a ship's crew, see United N.Y. & N.J.S.H. Pilots' Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517 (1959); McQuaid v. United States, 337 F.2d 483 (3rd Cir. 1964). In Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 629, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), recovery under the warranty was denied to a guest.

at the time of his injury the vessel was not a "dead" ship, but on the contrary was in navigation.[3]

■ Whether McCown has the status of a seaman cannot be determined merely from the fact that he was sweeping one of the ship's tanks. The character of his work must be measured by the contract the shipyard was called upon to perform. In United N. Y. & N. J. S. H. Pilots' Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517 (1959), the vessel was brought to a shipyard for annual overhaul which included dismantling and overhauling the ship's generators. A shore-based worker employed by a subcontractor was killed by fumes from carbon tetrachloride with which he was cleaning the generators. The Court denied recovery because the decedent was not doing the type of work traditionally done by the ship's crew. In reaching this conclusion the Court looked to the entire job—not simply that part the decedent was performing, saying [358 U.S. at 618, 79 S.Ct. at 519]:

> "It avails nothing to say that the decedent was an 'electrician,' and that many modern ships carry electricians in their crew. Pope & Talbot, Inc. v. Hawn explicitly teaches that such labels in this domain are meaningless. See 346 U.S. at 413 [74 S.Ct. 202]. It is scarcely more helpful to indulge in the euphemism that the decedent was 'cleaning' part of the ship, and to say that it is a traditional duty of

seamen to keep their ship clean. The basic fact is, in the apt words of Judge Lumbard's dissenting opinion in the Court of Appeals, that the decedent 'was not doing what any crew member had ever done on this ship or anywhere else in the world so far as we are informed.' " [4]

McCown urges that the sandblasting and coating process for the tanks is simply a current method of performing with modern machinery the traditional maritime tasks of a seaman—chipping and painting. He relies upon a number of cases which hold that the use of newly developed machinery to perform a seaman's task does not avoid liability for unseaworthiness.[5] The difficulty with McCown's argument is not the principle of law upon which he relies, but the facts concerning the type of work being performed. The evidence disclosed that the tank coating process in which McCown was engaged had never been done by any seaman at any time. The work required equipment and techniques never possessed by seamen. It was not merely an improved method of preserving tanks, for previously no means of preservation was available. Formerly the tanks were allowed to rust until they became unserviceable and required replacement, a major undertaking not performed by seamen.

■■ McCown's reliance on Allen v. Union Barge Line Corp., 239 F.Supp. 1004 (E.D.La.1965), aff'd, 361 F.2d 217

---

3. Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961); Van Horn v. Gulf Atlantic Towing Corp., 388 F.2d 636 (4th Cir. 1968).

4. In West v. United States, 361 U.S. 118, 122, 80 S.Ct. 189, 192, 4 L.Ed.2d 161 (1959), the Court touched upon the same subject in considering the closely related problem of whether a ship in repair docks for overhaul was "in navigation." The Court pointed out that consideration should be given to "the pattern of the repairs, and the extensive nature of the work contracted to be done, rather than the specific type of work that each of the numerous shore-based workmen is doing on ship-board at the moment of injury.

The job analysis which the latter would call for would lead to fortuitous results."

5. See Deffes v. Federal Barge Lines, 361 F.2d 422 (5th Cir.), cert. denied, Continental Grain Co. v. Deffes, 385 U. S. 969, 87 S.Ct. 503, 17 L.Ed.2d 433 (1966); Huff v. Matson Navigation Co., 338 F.2d 205 (9th Cir. 1964), cert. denied, 380 U.S. 943, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965); Rodriguez v. Coastal Ship Corp., 210 F.Supp. 38 (S.D.N.Y.1962). Contra, McKnight v. N. M. Paterson & Sons, 181 F.Supp. 434 (N.D.Ohio), aff'd, 286 F.2d 250 (6th Cir. 1960), cert. denied, 368 U.S. 913, 82 S.Ct. 189, 7 L. Ed.2d 130 (1961).

(5th Cir. 1966), cert. denied, 385 U.S. 1006, 87 S.Ct. 713, 17 L.Ed.2d 545 (1967), and Lawlor v. Socony-Vacuum Oil Co., 275 F.2d 599 (2d Cir. 1960), is misplaced. In both cases a shipyard worker who was injured aboard a vessel laid up for annual overhaul was entitled to damages against the shipowner. In *Allen* the ship was receiving routine annual maintenance, and the worker in removing a bearing from a propeller shaft was doing a task traditionally performed by seamen in maintaining the ship. In *Lawlor* the overhaul of the ship involved a large number of miscellaneous, minor items. The injured shipyard worker supervised marking leaks and cracks in the bulkheads. The chief officer of the ship testified that when the vessel was not in a shipyard the task of locating and temporarily repairing leaks in the bulkhead was done by members of the crew using equipment carried on board for that purpose. The reason for extending protection to shore-based workers in *Allen* and *Lawlor* is found in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 95, 66 S.Ct. 872, 877 (1946):

> "All the consideration which gave birth to the liability [for unseaworthiness] and have shaped its absolute character dictate that the owner should not be free to nullify it by parcelling out his operations to intermediary employers whose sole business is to take over portions of the ship's work or by other devices which would strip the men performing its service of their historic protection."

When, however, the worker is not performing a seaman's task, no basis exists for extending the warranty of seaworthiness. Instead the injured worker must look to his own employer, or if the shipowner is negligent, seek redress for a maritime tort. White v. United States, 400 F.2d 74 (4th Cir. 1968); Van Horn v. Gulf Atlantic Towing Corp., 388 F.2d 636 (4th Cir. 1968). Because McCown was not engaged in the type of work traditionally done by a ship's crew, he was not a member of the class to whom the warranty of seaworthiness extended.

We, therefore, find it unnecessary to consider Humble's additional defense that the tanker was out of navigation, and for this reason Humble did not warrant the seaworthiness of the vessel.

The judgment of the district court is affirmed.