Margaret T. **MURPHY**, Administratrix Ad Prosequendum of the State of Francis George Murphy, Deceased

v.

**NATIONAL BULK CARRIERS, INC.,** Pittman Manufacturing Company and H. K. Porter Company, Inc., Successor to Electric Service Manufacturing Company.

**M–W EQUIPMENT COMPANY,** a Division of Metalweld, Inc.

v.

**SUN SHIPBUILDING & DRY DOCK COMPANY.**

Civ. A. No. 69–791.

United States District Court, E. D. Pennsylvania.

March 19, 1970.

Klovsky, Kuby & Harris, Philadelphia, Pa., for plaintiff.

Liebert, Harvey, Herting, Short & Lavin, White & Williams, Detweiler, Sherr & Hughes, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

TROUTMAN, District Judge.

The present suit is a wrongful death and survival action brought by Margaret T. Murphy, administratrix ad prosequendum of the estate of Francis George Murphy, against defendants National Bulk Carriers, Inc. (National Bulk), shipowner, Pittman Manufacturing Company, H. G. Porter Company, Inc., and M-W Equipment Company. Decedent's employer, Sun Shipbuilding & Drydock Company, has been joined as third-party defendant. In her complaint, plaintiff has alleged, *inter alia*, that

decedent's fatal injuries were attributable to negligence on the part of the shipowner National Bulk in failing to provide decedent with a safe place to work and allowing a dangerous and defective machine to be used in connection with decedent's work on defendant's vessel. It is further alleged that defendant's vessel, the SS ORE TRANSPORT, was unseaworthy.

Presently before us is a motion by defendant shipowner National Bulk for summary judgment. Therein it is contended that as a matter of law the doctrine of unseaworthiness is not applicable to the shipowner under the circumstances of this case, and that there is no genuine issue of material fact concerning the shipowner's alleged negligence.

Our examination of defendant's motion, the pleadings, affidavits and applicable discovery tend to establish the following material facts:

Decedent, Francis George Murphy, was a shore-based rigger foreman employed by third-party defendant, Sun Shipbuilding & Drydock Co. (Sun), a company engaged in the business of repairing seagoing vessels. An arrangement was made for Sun to perform certain repair work on defendant's vessel, the SS ORE TRANSPORT, and pursuant thereto the ship was brought to Sun's docks on May 14, 1968. The repair order, in part,[1] called for inspection, cleaning and repairs to the vessel's propellers, sea valves, sea chests, rudders and tail shaft, the cost of which totaled $116,646.00. The repairs called for could not be accomplished while the ship remained in the water[2] and, therefore, it was placed on a floating drydock, secured, and raised completely out of the water where it remained from May 14, 1968, to May 20, 1968, the duration of the repair work. It is not disputed that while the SS ORE TRANSPORT was in drydock the ship's crew was dismissed. Nor is it controverted that during the time of these repairs the ship's engines were shut down and the vessel's electric current, water, steam, air, fire lines and phone service were provided by the drydock.

Decedent was fatally injured on May 15, 1968, while he was in the process of preparing to remove the ship's propeller. During the course of this operation, decedent was raised toward the ship in the basket of a personnel hoisting device called a "cherry picker"[3], which was owned, maintained and furnished to him by his shipyard employer.[4]

After decedent had rigged a chain fall to the basket of the "cherry picker" the basket carrying decedent broke loose from its boom causing decedent to fall to his death to the floor of the drydock. At the time of the accident the "cherry picker" was resting on the floor of the drydock[5] and it was not connected to or attached to the ship, but was some thirty feet away.[6] The deposition of Sun's vice president indicates that defendant shipowner, its masters, crew and officers were not permitted to participate in any decisions pertaining to the man-

---

1. The repair order dated April 24, 1968, comprises 34 pages of detailed specifications too unwieldly to set forth herein at any great length. In general, the vessel was to be placed in drydock for inspection and painting. The entire hull was to be washed down with high pressure hoses and painted. All underwater valves were to be opened, ground in, repacked and rejointed. The propellers were to be disconnected, removed and repaired. See defendant's Exhibit B which has been filed and made a part of the record for the purposes of this motion.

2. Robert Galloway, vice president of Sun Shipbuilding & Drydock Co. in answers to interrogatories propounded by National

Bulk stated in answer 9(d) that "[i]n order to perform the work called for on the SS 'ORE TRANSPORT' it was necessary to remove the vessel from the water. * * * The operation being performed is always performed when the vessel is out of the water, without power, by a dockyard. Defendant's Exhibit A.

3. A "cherry picker" is a mobile piece of equipment which has a crane attached to a four-wheel truck base. Deposition of Missaro at p. 43.

4. Deposition of Missaro at p. 4.

5. Deposition of Missaro at pp. 44–45.

6. Deposition of Missaro at p. 49.

ner or means of carrying out any work done by employees of Sun.[7] This deposition also indicates that the nature of the work involved required the use of specific shipyard tools and facilities, including chain falls, pneumatic wrenches, mobile equipment for staging and a drydock.[8]

## I.

### *Unseaworthiness*

The first question presented is whether, under the circumstances of this case, the warranty of seaworthiness was owed by the defendant shipowner to decedent.

██ ██ The doctrine of seaworthiness is in essence that the things about a ship be reasonably fit for the purpose for which they are to be used. Henry v. S.S. Mount Evans, 227 F.Supp. 408 (D. Md.1964); Guttierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963). The doctrine "is essentially a species of liability without fault" and is "neither limited by conceptions of negligence or contractual in character. It is a form of absolute duty owing to all within the range of its humanitarian policy". Seas Shipping Co. v. Sieracki, 328 U.S. 85, 87, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The rationale underlying the seaworthiness rule lies in the fact that the conditions of a seaman's employment are such as to make him a "ward of the admiralty" and justify placing a large responsibility for his safety on the shipowner. Mahnich v. Southern S. S. Co., 321 U.S. 96, 103, 64 S.Ct. 455, 88 L.Ed. 561 (1944). The Supreme Court in this connection has observed that:

"[A seaman] is subject to the rigorous discipline of the sea, and all the conditions of his service constrain him to accept, without critical examination and without protest, working conditions and appliances as commanded by his superior officer. These condi-

tions, which have generated the exacting requirement that the vessel or the owner must provide a seaman with seaworthy appliances with which to do his work, likewise require that safe appliances be furnished when and where the work is to be done." Mahnich v. Southern S.S. Co., *supra*, at pp. 103–104, 64 S.Ct. at p. 459.

██ ██ Additionally, and quite appropriately, the warranty of seaworthiness has not been limited to members of the ship's crew, but is extended to shore-based employees who come within the ambit of its humanitarian policy because engaged *on board a vessel in work traditionally performed by seamen*. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872 (1946). The warranty, however, is not applied to one who does not perform traditional seaman's work nor to a situation where the vessel is out of navigation undergoing major repairs so as to be considered a "dead ship". West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959).

It is, therefore, incumbent upon plaintiff here to establish that decedent was engaged on board the SS ORE TRANSPORT in traditional seamen's work and that the vessel was in navigation and not a "dead ship" at the time of the accident. McCown v. Humble Oil & Refining Co., 405 F.2d 596, 597–598 (4th Cir. 1969).

██ First of all, it is not alleged, and it does not appear anywhere in the record, that decedent was working *on shipboard* at the time of the accident or at any other time. Decedent at all times was operating from the drydock and was in the basket of the personnel-carrying device. Furthermore, it is not alleged that anything on board the vessel was unseaworthy. Plaintiff does allege in her complaint that the "cherry picker" was unseaworthy[9]. However, the doc-

---

7. Defendant's Exhibit A.

8. Defendant's Exhibit A. Third-party defendant's vice president further answered that "[t]he work that was being performed was not within the competence of

the crew nor would a crew have the equipment, tools or facilities to perform the work." *Id.*

9. Plaintiff's complaint, paragraph 11.

trine of seaworthiness does not go so far as to extend to vehicles or equipment which have never been and are not intended to be brought on board the ship. Fredericks v. American Export Lines, 227 F.2d 450 (2d Cir. 1955).

Aside from never having been present on board the SS ORE TRANSPORT, decedent was not performing traditional seamen's work at the time of the accident. The Supreme Court in *Sieracki, supra,* applied substance over form to extend the warranty of seaworthiness to those "doing a seaman's work and incurring a seaman's hazards". 328 U.S. at 99, 66 S.Ct. at 880, despite employment by persons other than the shipowner. *Id.* at 98, 66 S.Ct. 872. However, the Supreme Court and the Third Circuit have excluded from that category those persons performing special tasks such as making major repairs requiring drydocking or special skills. See West v. United States, *supra*; McQuaid v. United States, 337 F.2d 483 (3rd Cir. 1964). McQuaid v. United States, *supra,* is particularly apposite here. In that case libellant was a shoreside mechanic who was injured *while on board* the ship performing engine repairs.[10] The vessel at the time of the accident was undergoing extensive repair and received all its power from the shore. The crew was off the ship and the vessel was in the control of the drydocking company. On these facts, the Third Circuit held that the warranty of seaworthiness did not extend to libellant as he was a shoreside employee performing extensive repair work not traditionally done by seamen. 337 F.2d at 485. In so holding the Court pointed out that at the time of the accident the crew was not on board the vessel due to the nature of the repair work being done. Furthermore, in *McQuaid* the drydock company was in complete control of the ship.

■ Frequently, the question whether a shore-based worker is entitled to the warranty of seaworthiness may involve factual conflicts which require submission of this issue to a jury. However, where the facts conclusively demonstrate that the worker is not performing the traditional work of a seaman, it is error to submit this issue to a jury. United N. Y. & N. J. S. H. Pilots Assn. v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). Here, the uncontroverted facts clearly demonstrate that the decedent was not entitled to the warranty of seaworthiness. First of all, he was never aboard the SS ORE TRANSPORT. Additionally, the repair work, according to the repair order, involved the removal of the ship's propellers, among other things, by the use of specialized equipment such as a drydock, chain falls, pneumatic wrenches and the mobile personnel device here involved. The character of the work being performed by decedent at the time of the accident measured against the background of the entire scope and nature of the repair contract in this case indicates that decedent is not one to whom the doctrine of seaworthiness is owed. Furthermore, the rationale underlying the doctrine of seaworthiness does not support its application to plaintiff's decedent. Decedent clearly was not exposed to a seaman's risks nor was he forced to accept the ship's conditions or working appliances without critical examination as a consequence of his service. We, therefore, find no sound basis to extend to him the warranty of seaworthiness. Since we hold that decedent was not a member of the class to whom the warranty of seaworthiness was owed, we, therefore, find it unnecessary to consider the interesting question posed by defendant's additional defense that the SS ORE TRANSPORT was out of navigation at the time of the accident.

## II.

### *Negligence*

■ As an additional ground for recovery, plaintiff has alleged that de-

---

10. The work was being performed with an air hammer and chisels and was super-vised under the control and direction of the drydock company. 337 F.2d at 485.

fendant shipowner was negligent in failing to provide decedent with a safe place to work. In deciding whether the shipowner owes a duty to exercise reasonable care in furnishing a safe place to work, control over the ship is decisive. West v. United States, supra, 361 U.S. at 123, 80 S.Ct. at 193. "It appears manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or the repairs, and the work of repair in effect creates the danger which makes the place unsafe". Defendant, National Bulk, had no power either to supervise or control the repair work in which decedent was engaged,[11] and the injury here arises out of the performance of that work. There are no factual averments that defendant knew or was chargeable with knowledge that the personnel hoisting device used by decedent was defective prior to or at the time of the accident. There is some brief discussion in plaintiff's memorandum concerning a pad-eye built onto the side of the ship, however, it is entirely unclear what plaintiff alleges with respect to it.[12] Additionally, there is no allegation of known, hidden, inherent or latent defects which would charge the shipowner with a duty even if he had no control over the repairs. See West v. United States, supra, 361 U.S. at 124, 80 S.Ct. 189. On the basis of the foregoing discussion summary judgment in favor of defendant is appropriate on both the seaworthiness and negligence counts and we, therefore, will grant defendant's motion.

---

11. As we have previously noted, the vice president of Sun Shipbuilding & Drydocking Co. in his answers to interrogatories has indicated that defendant National Bulk was in no way permitted or authorized to supervise or control the repair work. Plaintiff, in her answer to defendant's motion for summary judgment denies that defendant had no knowledge or control over the operations. However, no factual averment other than the mere denial of control is raised by plaintiff. Unresolved factual issues cannot be created by drawing inferences from general conclusions which are not factually supported. Rule 56 itself requires that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response * * * must set forth specific facts showing there is no genuine issue for trial * * *." This plaintiff has not done.

12. Plaintiff's memorandum contains the following language:
"I do not think there would be any question that if the propeller had been removed and was hanging from the pad-eye which comprised part of the vessel's hull and the pad-eye broke allowing the propeller to fall and crush a shipyard worker that there would be an issue of negligence for the jury.
In the same regard, the location of the pad-eye in the design of the vessel and its use in removing the propeller were factors to be considered in the determination as to whether or not the shipowner provided a reasonably safe place for workers who had to remove the propeller while the vessel was in drydock."
There is no allegation that the pad-eye in any way was defective or caused the injuries claimed. We cannot permit plaintiff to proceed against defendant on these scanty allegations.