873 F.2d 1440
 1989 A.M.C. 1306
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John F. O'MEARA, Individually and in his own right; M.
Kathleen O'Meara, a/k/a M.K. Duttro, Jointly and
as Husband and Wife, Plaintiffs-Appellants,
v.
C.F. LANGENFELDER & SON, INC.; Bucyrus Erie Company,
Division of Becor Western, Defendants-Appellees.
 No. 88-3836.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 10, 1989.
Decided: April 5, 1989.
 
 Joseph Francis Lentz, Jr. (Lentz, Hooper, Jacobs & Blevins, P.A., on brief), for appellants.
 James A. Johnson (William R. Dorsey, III, Semmes, Bowen & Semmes, on brief), for appellee.
 Before HARRISON L. WINTER, K.K. HALL and JAMES DICKSON PHILLIPS, Circuit Judges.
 PER CURIAM:
 
 
 1
 John O'Meara appeals from a summary judgment dismissing his action seeking damages for personal injuries under the Jones Act, 46 U.S.C. Sec. 588. He also contends that the district court erred by holding that he was not entitled to the warranty that the dredge he was attempting to move was seaworthy. We affirm.
 
 
 2
 O'Meara was injured on November 2, 1983, while supervising the movement of a dredge over a perimeter dike at the Hart-Miller Island Project which involved the creation of a new island park by the Maryland Port Administration. The dike was between 250-500 feet wide and created a large enclosed area of water. The dredge had recently completed a several-month dredging operation inside the dike, and O'Meara's particular responsibility was to plan for and supervise the movement of the dredge back over the dike once its work was completed. He had previously supervised the successful movement of the dredge over the dike into the enclosed water area. Preparation for the lift back over the dike was to take one to two weeks and O'Meara was injured during this period. The accident occurred when O'Meara was on land and giving instruction to a land-based crane to move an object. While the operation was underway, the crane boom buckled, and O'Meara was hit by one of the cables that had been supporting the boom.
 
 
 3
 Claiming to be a "seaman" under the Jones Act, O'Meara brought suit in 1986 against his employer, C.J. Langenfelder & Sons, Inc., and Bucyrus-Erie Company, the manufacturer of the crane. Langenfelder subsequently filed motions for summary judgment on the grounds that O'Meara was not a seaman and that there was no factual basis for concluding that the dredge was unseaworthy. Bucyrus-Erie also filed a separate motion for summary judgment, which was granted in October 1987; O'Meara does not contest that judgment here. In March 1988 the district court granted summary judgment for Langenfelder on both counts. This appeal followed.
 
 
 4
 To qualify as a seaman under the Jones Act, a worker must satisfy three conditions: "1) the worker must be more or less permanently attached to a vessel or fleet; 2) the worker must be one whose duties serve naturally and primarily as an aid to navigation in the broadest sense; and 3) the vessel must be in navigation." Stephenson v. McLean Contracting Co., --- F.2d ---, No. 88-2805, slip op. at 3-4 (4th Cir. Dec. 23, 1988); Whittington v. Sewer Construction Co., 541 F.2d 427, 436 (4th Cir.1976). Here the first prong of this test--permanent attachment to the vessel--is decisive. Only if this prong is satisfied do the others come into play, and all the evidence points to the fact that O'Meara had no permanent attachment to the dredge. It is undisputed that O'Meara did not eat or sleep on the dredge, and he did not perform any function necessary to its operation. It is also undisputed that once the dredge was on location O'Meara returned to the company offices to do other work. His supervisory role over the dredge work was occasional; the captain of the dredge was responsible for the work day to day. Further, while the dredge was being moved on and off site, O'Meara's responsibilities again were supervisory and land-based; he had little water-based contact with the dredge of any kind. O'Meara's relationship to the dredge was therefore only intermittent and transitory. He was not a seaman, and summary judgment against O'Meara on his claim under the Jones Act was appropriate. Accord Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1074 (5th Cir.1986). See also Stephenson, slip op. at 5 (summary judgment held proper under second prong of seaman definition).
 
 
 5
 In certain circumstances a land-based worker may be entitled to a warranty of a vessel's seaworthiness and may be able to sue in admiralty for injury resulting from a vessel's unseaworthiness. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 497-98 (1971). The unseaworthiness theory is available, however, only where a claimant's injuries arise from the condition of the vessel, its appurtenances, cargo, or crew. Id. at 500. If the injury caused is on shore, the claimant must show that the ship or one of its appurtenances proximately caused the injury. Pryor v. American President Lines, 520 F.2d 974, 979 (4th Cir.1975). The injured worker must also establish that he was doing a seaman's work at the time of the injury. Stephenson, slip op. at 6; McCown v. Humble Oil & Refining Co., 405 F.2d 596, 597 (4th Cir.1969).
 
 
 6
 Again, O'Meara can satisfy none of these requirements. When injured, O'Meara was doing land-based, not seaman's work. He was injured on land by a land-based crane, not one an appurtenance to the dredge. The vessel was not the proximate cause of his injury. O'Meara had no viable claim of unseaworthiness to bring, and it was proper for the district court to dismiss this claim on summary judgment. Accord Stephenson, slip op. at 6.
 
 
 7
 AFFIRMED.