### Coolidge SPRATLEY, Libellant,

#### v.

### TIDEWATER CONSTRUCTION CORPO-RATION et al., Respondents.

#### No. 8506.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 16, 1965.

Leonard B. Sachs, Kanter, Kanter & Sachs, Norfolk, Va., for libellant.

Carter B. S. Furr, Jett, Sykes & Berkley, Norfolk, Va., for respondents.

MICHIE, District Judge.

The issue in this case is whether the libellant, Coolidge Spratley, was at the time he was injured a seaman-member of the crew and therefore entitled to maintain this action in admiralty.

Coolidge Spratley was an employee of the respondents (hereinafter, Tidewater) at the time of his injury on September 17, 1963. Tidewater was involved in construction of the Chesapeake Bay Bridge-Tunnel and in furtherance of that project maintained a piece of equipment on which Spratley was employed at the time of his injury. This piece of equipment can be termed a barge of approximately fifty by one hundred twenty-eight feet on which was mounted a derrick or crane.

The regular use for which this barge was maintained seems somewhat uncer-

tain but it appears from the depositions that at one point it was engaged in putting sand in large hollow concrete piles which had previously been placed by another piece of equipment. This task was accomplished by means of a "clam" bucket attached to the crane. At other times the barge was used as a pile driver and also for lifting and transporting materials necessary for construction purposes. On September 17, 1963, it appears that the barge was engaged in lifting and transporting certain material referred to as a "scaffold".

Spratley was regularly employed as a "pile driver man" which meant that he assisted in the operation of driving piles when the barge was engaged in that activity. There is evidence, however, that Spratley was not employed in that capacity exclusively. His immediate supervisor and he, himself, testified that he did many jobs on the barge—all odd jobs in furtherance of the work the barge happened to be engaged in and that did not require particularly skilled talents.

At the time of the accident Spratley was riding on a scaffold that was being moved by the barge. The scaffold was suspended from the crane as it was being carried. As the crane was lowering the scaffold into place on a part of the bridge Spratley prepared to step off the scaffold onto the bridge structure. Just as Spratley began to step down the roughness of the sea caused the barge and its crane to jerk the scaffold suddenly into the air, whereupon Spratley lost his balance and fell onto the bridge, injuring himself.

In connection with the determination of Spratley's occupational category it is to be noted that the barge had no motive power of its own, no assigned Coast Guard number, no rudder, no navigation lights and no facilities for the residence of a crew. Spratley was paid by the hour for his services, held no seaman's papers,

did not belong to any seaman's unions and was not referred to as anything other than a "pile driver man". He was a member of the carpenters' union. After his injury Spratley accepted payments under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950.

The case of Summerlin v. Massman Const. Co., 199 F.2d 715 (4th Cir.1952) is squarely in point on the issue before me. The facts in that case are practically identical to those in the instant case. There the plaintiff was employed on a floating derrick, similar to the one Spratley worked on, which was anchored in the York River in Virginia. The derrick was engaged in the construction of a bridge and the plaintiff was employed to perform the duties of a fireman for the derrick and to perform "such other duties as the defendants might assign to him in the building of the bridge." The Court reversed the finding of the District Judge which was that the plaintiff was not a seaman or crew member injured on a vessel engaged in navigation. The Court cited Jeffery v. Henderson Bros., 193 F.2d 589 (4th Cir.1951), a factually similar case, for its authority.

Equally persuasive is the case of Lawrence v. Norfolk Dredging Co., 319 F.2d 805 (4th Cir.1963). The Court therein considered Norton v. Warner Co., 321 U. S. 565, 64 S.Ct. 747, 88 L.Ed. 430 (1944) as controlling. In Norton the Supreme Court said at page 571, 64 S.Ct. at page 751:

> "If a barge without motive power of its own can have a 'crew' within the meaning of the Act and if a 'crew' may consist of one man, we do not see why Rusin [1] does not meet the requirements. A barge is a vessel within the meaning of the Act even when it has no motive power of its own, since it is a means of transportation on water."

1. Rusin was a "bargeman" whose duties were nebulously defined as taking general care of the barge.

The Court carefully noted that employees on board vessels may be deemed members of the crew even if their duties are not strictly navigational if such employment "also embraces duties essential for other purposes of the vessel."

Judge Boreman, relying on Norton in the Lawrence case, applied the standard to the facts before him and concluded, "In the instant case plaintiff's duties were connected with and contributed to the operation and welfare of the dredge when it was engaged in its assigned function." He found the plaintiff to be a member of the crew.

In view of the foregoing authorities, I must find that Coolidge Spratley at the time of his accident on September 17, 1963 was employed aboard the barge in such capacity as to make him a seaman or a member of the crew and he is therefore entitled to maintain this action in admiralty.