Clarence **BELLOMY**, Plaintiff,

v.

**UNION CONCRETE PIPE CO.**, a corporation, Defendant.

**Civ. A. No. 2435.**

United States District Court
S. D. West Virginia,
Huntington Division.

March 20, 1969.

Stanley E. Preiser, Preiser, Greene & Hunt, Charleston, W. Va., Harry Alan Sherman, Pittsburgh, Pa., for plaintiff.

Lawrence L. Pauley, Greene, Ketchum, Baker & Pauley, Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

Plaintiff brings this action for damages for personal injuries under the Jones Act, 46 U.S.C.A. Section 688, and under the doctrine of unseaworthiness, seeking in addition recovery of an amount in excess of $10,000 for maintenance and cure. The case is presently before the Court upon motion of the defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court, having examined the pleadings, affidavits, interrogatories and answers, and deposition, finds that no genuine issues of material fact are presented and that disposition on motion for summary judgment is appropriate. We find and base our decision on the following facts:

In June of 1965, and for many years prior thereto, plaintiff was employed as a crane operator by defendant, Union Concrete Pipe Co. The Crane which plaintiff operated was located upon a dock owned by the defendant on the bank of the Ohio River and was utilized for the purpose of unloading sand, gravel and other material from floating barges tied to the dock. As part of his duties, plaintiff was occasionally required to go aboard a barge for the purpose of moving it along the dock in connection with the unloading operations. While thus engaged upon a barge tied to the dock, the plaintiff was injured. Although the record is not entirely clear upon this matter, at the time of the injury plaintiff was apparently manipulating a cable attached to the barge for the purpose of moving the barge into unloading position. The work which plaintiff was performing at the time of his injury was ordinarily done by deck hands or members of the crew of the barge.

An average of less than fifty barges per year are unloaded at the defendant's dock and the unloading of each barge takes approximately one and one half days. As a consequence, plaintiff's duties also included work inside defendant's manufacturing plant and less than one half of his work time was spent in unloading barges. While working as a crane operator, plaintiff spent approximately one hour per day working aboard

the particular barge in dock. Thus, it appears that less than half of plaintiff's total worktime was spent in unloading barges and of this time only one hour per day, on an average, was spent aboard the barges in work characterized as that ordinarily performed by a deck hand or member of a crew of a barge.

At the time of plaintiff's injury, defendant did not itself own any barges nor did it own the particular barge upon which plaintiff was working when he was injured.

## THE JONES ACT CAUSE OF ACTION

Although at one time a seaman injured as a result of the negligence of a master or member of a crew of a vessel was restricted to relief by way of maintenance and cure, Congress in 1920 enacted the Merchant Marine Act, providing, among other things, a remedy for the seaman seeking indemnity for injuries. Act of June 5, 1920, ch. 250, sec. 33. Section 33 of that Act, 46 U.S. C.A. Section 688, commonly called the Jones Act, provides the seaman with a remedy for injuries suffered in the following terms:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdictions in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

As can be seen from a reading of Section 33, a remedy is provided under the Jones Act for a "seaman" suffering injury "in the course of his employment." No statutory definition is provided for the word "seaman" and, as a consequence, the courts have found it necessary to fashion an appropriate definition for that term. In view of the fact that the Merchant Marine Act, of which the Jones Act is a part, was remedial legislation enacted for the benefit and protection of seamen, the provisions of the Jones Act, in particular the definition of "seaman," have been given a liberal construction. The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936). In its broadest terms, the definition of a seaman has been held to include anyone "who does any sort of work aboard a ship in navigation." Carumbo v. Cape Cod S.S. Co., 123 F.2d 991, 995 (1st Cir. 1941). Thus, in consideration of the remedial nature of the Act and the liberal construction to be accorded it, the Supreme Court, in International Stevedoring Company v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), held that a longshoreman engaged in stowing freight in the hold of a vessel at dock was engaged in a "maritime service formerly rendered by the ship's crew" and was, accordingly, entitled to the remedies of a "seaman" under the Jones Act. This expansion of the concept of a "seaman" under the Jones Act was, however, short-lived, inasmuch as the Congress in 1927 enacted the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C.A. Section 901 et seq. By this Act, Congress created a system of compensation for employees engaged in maritime employment suffering disability or death as a result of injuries occurring upon the navigable waters of the United States. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 255, 60 S.Ct. 544, 84 L.Ed. 732 (1940). For those employees who are entitled to compensation, the remedy under the Act is exclusive insofar as the

liability of the employer is concerned.[1] 33 U.S.C.A. Section 905. As originally conceived, coverage under the Compensation Act extended to "seaman," however, in deference to the preference of the seamen's unions for their rights under the general maritime law and the Jones Act, the wording of the Act was amended so as to exclude from its coverage "[the] master or member of a crew of any vessel." 33 U.S.C.A. Section 903. It is particularly important for the purposes of this case to note that Congress did not exclude from coverage under the Act that broad class previously determined to be within the meaning of the term "seaman," rather, it limited its exclusion to those properly considered to be masters or members of a crew of a vessel. Accordingly, it has been held that the Longshoremen's and Harbor Workers' Compensation Act restricts the benefits of the Jones Act to "members of a crew of a vessel." Swanson v. Marra Brothers, Inc., 328 U.S. 1, 7, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). The important question, therefore, in adjudicating claims under the Jones Act is not whether the plaintiff is a "seaman" as that term was broadly defined by the Court in the *Haverty* case, supra, but whether the plaintiff is a "member of a crew of a vessel" within the meaning of the exclusion provided in the Longshoremen's and Harbor Workers' Compensation Act. Carumbo v. Cape Cod S.S. Co., supra, 123 F.2d at 994, Perez v. Marine Transport Lines, Inc., 160 F.Supp. 853 (E.D.La. 1958). In theory, this result may be justified by the conclusion that the Compensation Act had the effect of amending the definition of "seaman" under the Jones Act so as to equate that definition with the definition of the phrase "member of a crew." See Bodden v. Co-ordinated Carribean Transport, Inc., 369 F.2d 273 (5th Cir. 1966).

■ In determining whether or not an individual is a "seaman" within the meaning of the Jones Act or a "member of a crew" within the meaning of the exclusion in the Longshoremen's and Harbor Workers' Compensation Act, the courts have considered the following three requirements: (1) that the vessel be in navigation, (2) that there be a more or less permanent connection with the vessel and (3) that the worker be aboard primarily to aid in navigation. Norris, The Law of Seamen, V. 2, Section 659 (2nd ed. 1962). While noting that the word "crew" did not have an "unvarying legal significance," the Court in Norton v. Warner Company, 321 U.S. 565, 64 S. Ct. 747, 88 L.Ed. 931 (1944), emphasized that the term was at least comprehensive enough to cover "everyone * * * who, like seamen, at all times contribute to the labor about the operation and welfare of the ship when she is upon a voyage." With reference to the plaintiff in that particular case, the Court noted that he had a permanent attachment to a vessel, an attribute which in the opinion of the Court "commonly characterizes a crew." See also De Wald v. Baltimore & O. R. Co., 71 F.2d 810, 813 (4th Cir. 1934). Again, in the case of Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), the Court, in pointing out that there was evidence in the case from which the jury could find that the plaintiff was a member of a "crew," emphasized that there was sufficient evidence of record to permit a finding that the plaintiff was "permanently attached to and employed by the dredge as a member of a crew."

■ While recognizing that in cases of this nature disposition by motion for summary judgment is seldom appropriate, Braniff v. Jackson Ave.-Gretna Ferry, Inc., 280 F.2d 523 (5th Cir. 1960), nevertheless, under the circumstances of this case, where the admitted facts leave no reasonable room for conflicting ultimate inferences, our duty is clear. Lawrence v. Norfolk Dredging Company, 319 F.2d

---

[1]. An exception to the exclusive liability of the employer exists, however, where the employer is the owner of an unseaworthy vessel upon which his employee is injured. Reed v. The YAKA, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).

805 (4th Cir. 1963).[2] Thus, on the basis of the facts as revealed in the pleadings, affidavits, interrogatories and answers, and deposition, and in consideration of the law, as enumerated above, applicable thereto, we find that plaintiff was not, at the time of his injury, a "master or member of a crew" within the intendment of the exclusion to coverage under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. Section 903, and is, therefore, not entitled to maintain an action under the Jones Act, 46 U.S.C.A. § 688, for recovery of damages for personal injuries. Carumbo v. Cape Cod S.S. Co., supra, 123 F.2d at 994.

■ Our ruling in this instance is based upon several considerations, the most important of which is the fact that, unlike cases of a master or member of a crew, in plaintiff's case there is no "more or less" permanent connection with a vessel. Perez v. Marine Transport Lines, Inc., supra, 160 F.Supp. at 885; A. L. Mechling Barge Line v. Bassett, 119 F. 2d 995, 998 (7th Cir. 1941). The evidence shows that that part of plaintiff's work which could be classified as a "seaman's" work amounts to only a very small part of his total duties and is only incidental to his primary duty of unloading the cargo of the barges at the docks. Travelers Insurance Company v. Belair, 290 F.Supp 221 (D.Mass.1968); Woodfield Fish & Oyster Company v. Wilde, 124 F.Supp. 331 (D.Md.1953). As can be seen from the facts of this case, plaintiff was at the time of his injury an employee at work on a vessel in navigable waters, however, his duty was primarily that of a laborer, "of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on vessel who are naturally and primarily on board to aid in her navigation." South Chicago Coal & Dock Co. v. Bassett, supra, 309 U.S. at 260, 60 S.Ct. at 549.

While some of plaintiff's duties were admittedly those normally performed by seamen, viewed in the context of all of his duties, it is easily seen that rather than being a "member of a crew" or "seaman" within the meaning of the Jones Act, plaintiff was merely "substituting in a single phase of a seaman's duties." Biggs v. Norfolk Dredging Company, 360 F.2d 360, 364 (4th Cir. 1966).

## CAUSE OF ACTION FOR MAINTENANCE AND CURE

■ With respect to this claim of plaintiff, it need only be noted that the right to maintenance and cure is available only to seamen in the "primative sense," the members of the crew, including the officers and master. Gilmore and Black, The Law of Admiralty, p. 255 (1957); Rackus v. Moore-McCormack Lines, Inc., supra. Having found that plaintiff was not at the time of his injury a "seaman" or a "member of a crew" within the meaning of the Jones Act, plaintiff is thereby precluded from maintaining an action for maintenance and cure. As pointed out in Norris, The Law of Seamen, V. 1, 1968 Supp. p. 33 (2d ed. 1962), "it is in the nature of an anomaly to grant maintenance and cure to an injured person and then to hold that he is not a seaman." The reverse of this proposition—to hold that an injured person is not a seaman and then to grant him maintenance and cure —would be equally anomalous.

## CAUSE OF ACTION UNDER THE DOCTRINE OF UNSEAWORTHINESS

■ The doctrine of unseaworthiness, whereby a duty is imposed upon the owner of a vessel to furnish a seaworthy ship, has no application to the facts of this case inasmuch as the defendant in

---

2. See also Sullivan v. American President Lines, LTD., 206 F.Supp. 547 (N.D.Cal. 1961); Rackus v. Moore-McCormack Lines, Inc., 85 F.Supp. 185 (E.D.Pa. 1949); McCown v. Humble Oil & Refining Company, 405 F.2d 596 (4th Cir. January 16, 1969).

**266**

this action is not the owner of the boat nor was the boat in its possession or under its control at the time plaintiff was injured. Watson v. Gulf Stevedore Corporation, 374 F.2d 946 (5th Cir. 1967). This case is distinguishable from Reed v. The YAKA, supra, since in that case the plaintiff's employer, the defendant in the suit, was also the bareboat charterer, or owner *pro hac vice*, and as such was liable for unseaworthiness. The following statement by plaintiff, made in his affidavit submitted in opposition to defendant's motion for summary judgment, discloses the nature of the relationship of defendant to the barge in this manner:

"That in boarding barges in course of his employment by Union Concrete Pipe Co. he was doing work of a deck hand in the crew, and was relieving such hands, under order, or for the special purpose of accommodating the positioning of the barges for the convenience of the men and equipment of Union Concrete Pipe Co., with the permission of the *vessel officers* who *remained in charge of the vessels and tows at all times*, since they were never removed from navigation while in dock for loading or unloading." (Emphasis added).

Under such circumstances any obligation arising out of the unseaworthiness of the barge would give rise to a cause of action against the owner of the barge and not the defendant in this action.

## SUMMARY

Having reviewed the pleadings, affidavits, interrogatories and answers and deposition, we find that there is no genuine triable issue concerning whether (1) plaintiff was a seaman or crew member within the meaning of the Jones Act, (2) plaintiff was a seaman entitled to maintenance and cure or (3) defendant was obligated to plaintiff under the doctrine of unseaworthiness. For these reasons, defendant's motion for summary judgment will be granted and plaintiff's action dismissed.