**James Franklin LEWIS, Jr.,**
**Plaintiff,**

v.

**ROLAND E. TREGO & SONS, INC.,**
**Defendant.**

**Civ. No. 71–900.**

United States District Court,
D. Maryland.

June 20, 1973.

Joseph F. Lentz, Jr., Baltimore, Md., Robert Farnell, III, Cambridge, Md., and Monfred, Lentz & Hooper, Baltimore, Md., for plaintiff.

R. Roger Drechsler and Raymond J. Cardillo, Baltimore, Md., for defendant.

HARVEY, District Judge:

A marine construction worker here seeks to invoke the admiralty jurisdiction of this Court to recover damages from his employer for personal injuries sustained in the course of his employment. James Franklin Lewis, Jr., plaintiff, was injured on December 8, 1969, while working on a barge moored at Roberts Shipyard, in Cambridge, Maryland. At the time, he was employed by the defendant, Roland E. Trego & Sons, Inc. (hereinafter "Trego"), which had been engaged to build a boat house and to do other construction work at the shipyard.

Count 1 of the complaint is brought under the Jones Act, 46 U.S.C. § 688. It is alleged in Count 1 that plaintiff was a seaman at the time of his injuries and that he is entitled to recover damages by reason of the defendant's negligence. In Count 2, plaintiff alleges that the barge in question was unseaworthy and that he is entitled to recover for injuries caused by such unseaworthiness.[1]

---

1. As to Count 2 of the complaint, defendant claims, *inter alia*, that plaintiff has improperly alleged a claim under the doctrine of unseaworthiness. For the purposes of deciding the issues presently before the Court, it has been assumed that a proper cause of action has been alleged.

■ A motion for summary judgment filed by defendant has heretofore been denied by the Court. In such motion, defendant asserted (1) that plaintiff was barred from recovering damages in this Court because he had previously filed claims for compensation under Maryland law and also under the Longshoremen's and Harbor Workers' Compensation Act; and (2) that plaintiff could not invoke the admiralty jurisdiction of this Court because he was not a seaman nor was he doing seaman's work when injured. With reference to defendant's first point, such motion was denied for the reasons stated by the Fourth Circuit in Biggs v. Norfolk Dredging Company, 360 F.2d 360 (4th Cir. 1966). With reference to the argument that plaintiff was not a seaman, this Court ruled that there were factual matters in dispute as to this issue and that summary judgment was therefore not appropriate. However, with the consent of counsel, the Court agreed to hold a special evidentiary hearing to determine whether or not plaintiff's status was such that he might properly invoke the admiralty jurisdiction of this Court under either Count 1 or Count 2. See *Biggs, supra,* at 366.

Such hearing has now been held, and evidence has been adduced both on behalf of the plaintiff and of the defendant. Two questions are presently before the Court: (1) whether plaintiff, when injured, was a seaman under the Jones Act, and (2) whether plaintiff, although a shore-based worker at the time of his injuries, was a member of that class to whom admiralty law extends the warranty of seaworthiness.

■ Whether a shore-based worker is a seaman is essentially a question of fact to be determined by a jury or other trier of the facts. Senko v. La Crosse Dredging Corp., 352 U.S. 370, 373, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); Lawrence v. Norfolk Dredging Company, 319 F.2d 805 (4th Cir. 1963). Of course, there are undoubtedly cases which lend themselves to a decision on this issue on a motion for summary judgment because the essential facts are not in dispute. Hill v. Diamond, 311 F. 2d 789 (4th Cir. 1962); .Bellomy v. Union Concrete Pipe Co., 297 F.Supp. 261 (S.D.W.Va.1969), aff'd 420 F.2d 1382 (4th Cir. 1970), cert. den. 400 U.S. 904; 91 S.Ct. 144, 27 L.Ed.2d 142 (1970); McCown v. Humble Oil and Refining Co., 405 F.2d 596 (4th Cir. 1969), cert. den. 395 U.S. 934, 89 S.Ct. 1996, 23 L. Ed.2d 449 (1969). In the pending case, the essential facts are very much in dispute, and the resolution of the factual issues has required that the Court assess the credibility of witnesses and the weight their testimony deserves.

I

*The Jones Act Claim*

■ To qualify as a seaman under the Jones Act, a plaintiff in a case such as this one must show (1) that he was a member of the crew of and had a more or less permanent connection with a floating structure, (2) that the floating structure in question was a vessel in navigation, and (3) that he was employed to work on the vessel in a capacity contributing to its essential mission and purpose. Senko v. La Crosse Dredging Corp., *supra;* United Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); Summerlin v. Massman Construction Co., 199 F.2d 715 (4th Cir. 1952); Harney v. William M. Moore Building Corporation, 359 F. 2d 649 (2d Cir. 1966); Hill v. Diamond, *supra;* Woodfield Fish & Oyster Company v. Wilde, 124 F.Supp. 331 (D.Md. 1953); Perez v. Marine Transport Lines, 160 F.Supp. 853 (E.D.La.1958); *cf.* Norris, The Law of Seamen (3d Ed.) Vol. 2, § 663, p. 294.

■ Little difficulty is presented in this case by the last two requirements. Barges, dredges, scows and floating derricks have all been held to be vessels for purposes of admiralty jurisdiction. Norton v. Warner Co., 321 U.S. 565, 64

S.Ct. 747, 88 L.Ed. 931 (1944); Gianfala v. Texas Company, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955); Summerlin v. Massman Construction Co., *supra;* Jeffrey v. Henderson Bros., Inc., 193 F.2d 589 (4th Cir. 1951); Hill v. Diamond, *supra.* A vessel is in navigation even though moored to a dock. Senko v. La Crosse Dredging Corp., *supra;* Carumbo v. Cape Cod Steamship Co., 123 F.2d 991 (1st Cir. 1941).

The facts here indicate that plaintiff was injured while working on defendant's wooden barge which was moored in navigable waters at Roberts Shipyard in Cambridge, Maryland. Furthermore, the work then being done by plaintiff was contributing to the essential mission of such barge, namely its use as a floating platform for the performance of marine construction work. Plaintiff has therefore satisfied the second and third requirements for establishing that he is a seaman under the Jones Act.

The basic dispute in this case is whether plaintiff was a member of the crew of and had a more or less permanent connection with the barge in question.[2] As the evidence here is conflicting, this is one of those cases mentioned in Hill v. Diamond, *supra,* in which the determination of a plaintiff's status as a seaman under the Jones Act "may depend upon the view which the finder of fact takes of the evidentiary facts." 311 F.2d at 793.

At the time of this accident, plaintiff was 31 years of age and had been working for the defendant for approximately one year. Since its incorporation in 1962, the defendant Trego had been engaged in the business of building docks, installing pilings and doing other types of marine construction work. Before coming to work for defendant, plaintiff's work experience had not been of a maritime nature. Plaintiff was discharged from the Army in 1960, worked thereafter on an assembly line for two different food processing firms located on the Eastern Shore of Maryland and on one occasion was a fork lift operator at a lumber yard. Like other Easternshoremen, plaintiff on occasion supported himself by fishing and crabbing. He had never had seaman's papers nor had he ever been employed in seaman's work or as a member of the crew of any vessel. Plaintiff was hired by defendant as a general laborer and performed various construction duties for his employer. Trego owned three pieces of floating equipment, namely a pile driver, a wooden barge and a steel barge. When it became necessary for defendant to do its construction work on or over water, these pieces of equipment would be used as floating platforms. In the course of his duties, plaintiff would occasionally do work on each one of these floating structures.

On December 8, 1969, plaintiff and his fellow workers were engaged in putting a roof on a new boat house which Trego was building at Roberts Shipyard. A row of piles had been previously driven into the water, and the work planned for the day in question involved connecting the tops of the piles by means of headers. As such tops were some 18 feet above the water, a scaffold was assembled on defendant's wooden barge to permit work to be done at the proper level. The barge was then moved into place alongside the piles. Plaintiff and a fellow employee were pulling themselves up to the top of the scaffolding to commence their work when a rope on one side started to slip. While plaintiff, assisted by William Trego, was attempting to straighten his side, the scaffold overturned, and he fell or was caused to fall to the deck of the barge, sustaining a fractured right arm, fractured ribs and other injuries.

Plaintiff had gone to work for defendant in December 1968, approximately

---

**2.** In Senko v. La Crosse Dredging Corp., *supra,* the Court stated that the factual issue was whether the plaintiff "was permanently attached to and employed by the dredge as a member of its crew." 352 U.S. at 372, 77 S.Ct. at 417.

one year before the accident, but employment records indicate that he actually worked for only nine of those twelve months. During such nine months, plaintiff worked on three or four different construction jobs. Plaintiff's general duties consisted of helping William Trego[3] and other employees in driving piles, filling, grading, and building bulkheads, piers, boat houses and other related structures.

From the conflicting testimony, this Court finds that approximately 90% of the work which plaintiff performed for his employer during such nine-month period was done while plaintiff was on the land. The remaining 10% was done while on one or more of defendant's pieces of floating equipment located on navigable waters. Plaintiff was not permanently assigned to any one of such pieces but on occasion would work on each one of these structures, including the wooden barge.[4] When the wooden barge, which was self-propelled, was moved from one job site to another, plaintiff rarely went along. During such trips, the barge was usually operated by William Trego, and plaintiff was able to remember only one occasion when he ever steered the barge, lasting for only a few minutes.[5] When the wooden barge was used in connection with defendant's construction work, plaintiff would assist in moving it, handling its lines or otherwise preparing it for its intended use as a floating platform. However, the evidence indicates that such activity was a very small percentage of the total work that plaintiff did for Trego. Plaintiff never slept on board the barge nor remained on board any longer than was necessary to accomplish his general duties as a marine construction worker.

From the evidence, this Court finds that plaintiff did not have a more or less permanent connection with defendant's wooden barge and therefore cannot be considered to have been a member of the crew of that vessel when injured. Accordingly, plaintiff's status on December 8, 1969 was not that of a seaman entitled to sue in admiralty under the Jones Act.

Several Fifth Circuit decisions have reached similar conclusions on analogous facts. In Labit v. Carey Salt Company, 421 F.2d 1333 (5th Cir. 1970), a shore-based worker employed to load bulk salt was denied recovery under the Jones Act even though he occasionally worked aboard a power boat used to position vessels being loaded by means of a conveyor belt. In Keener v. Transworld Drilling Company, 468 F.2d 729 (5th Cir. 1972), the plaintiff was injured while employed as a rotary helper on a fixed stationary platform in the Gulf of Mexico. As there were no other living facilities, plaintiff ate, slept and spent his off-time duty on a tender which serviced the drilling platform. On one occasion, he spent some four days scraping paint and painting in the engine room of the tender while the drilling equipment was inoperative. Noting that these four days represented approximately twenty to twenty-five percent of the time that plaintiff worked for the drilling company, the Court held that he was not a seaman because he had not shown that he performed a significant part of his work aboard a ship with at least some degree of regularity and continuity.

3. William Trego was a principal stockholder and officer of defendant and regularly supervised the work of its employees.

4. Plaintiff claims to have been a member of the crew of the wooden barge, and it is a more or less permanent connection with that floating structure which plaintiff has the burden of proving.

5. As the Supreme Court said in Senko v. La Crosse Dredging Corp., *supra* (352 U.S. at page 373, 77 S.Ct. at page 417) : " * * * the duties of a man during a vessel's travel are relevant in determining whether he is a 'member of the crew' while the vessel is anchored."

Under other facts, employees of offshore drilling companies have been held to be seamen because they were permanently assigned to a vessel used in the drilling operations. Noble Drilling Corp. v. Smith, 412 F.2d 952 (5th Cir. 1969); Kimble v. Noble Drilling Corporation, 416 F.2d 847 (5th Cir. 1969).

Although no direct ruling has been found in the Fourth Circuit on the issues presently before this Court, it was noted in Hill v. Diamond, 311 F.2d 789, 793 (4th Cir. 1962), by way of dictum, that a Jones Act remedy would not be available to a construction worker on a dock simply because he would like to associate himself with a transient vessel temporarily moored there. Bellomy v. Union Concrete Pipe Co., *supra*, applied this dictum in denying relief to an injured dock worker. In *Bellomy*, the plaintiff was a crane operator employed by a manufacturer of concrete pipe. The plaintiff regularly performed his duties on a dock located on the bank of the Ohio River. Occasionally, plaintiff was required to go aboard barges for the purpose of moving them along the dock in connection with the unloading of sand, gravel and other materials transported by such barges. While so engaged on board a barge tied to the dock, plaintiff sustained injuries for which he sought recovery from his employer. The District Court held that plaintiff was not a seaman entitled to sue under the Jones Act, and further that he could not invoke the doctrine of unseaworthiness to recover damages for his personal injuries. The Fourth Circuit affirmed, per curiam, 420 F.2d 1382, and the Supreme Court denied certiorari, 400 U.S. 904, 91 S.Ct. 144, 27 L.Ed.2d 142.

The District Court in *Bellomy* found from the evidence that that part of the plaintiff's work which could be classified as a seaman's work amounted to only a very small part of his total duties and was merely incidental to his primary duties of unloading cargo from barges located at the dock. 297 F.Supp. at 265. Similarly in this case, plaintiff's principal employment was as a shore-side construction worker. Only occasionally was he required to go aboard his employer's wooden barge to perform his regularly assigned duties. Work aboard such barge was but a small part of his total duties and was only incidental to his employment as a general construction laborer.

The present case is not one in which a plaintiff's principal duties consisted of working aboard a particular barge or other piece of floating equipment. Under such circumstances, it has been held that the injured party is a member of the crew of the particular piece of floating equipment which would constitute a vessel under accepted principles of admiralty law. Summerlin v. Massman Const. Co., *supra*; Hill v. Diamond, *supra*; Spratley v. Tidewater Construction Corporation, 238 F.Supp. 650 (E.D.Va. 1965). In *Summerlin*, the plaintiff was a fireman regularly assigned to a floating derrick, and his principal duties involved work on such vessel in navigable waters. In *Hill*, the plaintiff's permanent assignment was as a deck foreman on a dredge.

*Spratley*, like the present case, involved a construction worker injured on a barge. There, the plaintiff's employer was engaged in constructing the Chesapeake Bay Bridge-Tunnel. In furtherance of such work, most of which was carried out in the Chesapeake Bay far from shore, defendant owned a large barge on which was mounted a derrick or crane. Plaintiff travelled to the job site on and was regularly employed on the barge, which was used for driving piles, for lifting and transporting materials to the Bridge-Tunnel site and for many other purposes. On these facts, the Court found that the plaintiff was a member of the crew of the barge and was therefore entitled to sue in admiralty.

Quite clearly in *Summerlin, Hill* and *Spratley*, the plaintiff had a permanent connection with the floating structure in question. Here, plaintiff's work aboard

the wooden barge was sporadic and merely incidental to his primary land-based activities.

## II

### *The Claim of Unseaworthiness*

■ There is little doubt that a land-based worker under appropriate circumstances is entitled to the warranty of seaworthiness and may sue in admiralty the owner of the vessel where the injury occurred. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L. Ed. 143 (1953); Biggs v. Norfolk Dredging Company, *supra*; Schell v. Chesapeake and Ohio Railway Company, 395 F.2d 676 (4th Cir. 1968). The fact that his employer owns the vessel in question is no impediment to the employee's suit. Reed v. The S. S. YAKA, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).

The test to be applied to a claim such as the one presented by Count 2 was stated by the Fourth Circuit in McCown v. Humble Oil & Refining Company, *supra*, 405 F.2d at pages 597–598:[6]

> "In order for a shore-based worker to recover for injuries caused by unseaworthiness, he must establish that he was doing a seaman's work and that at the time of his injury the vessel was not a 'dead' ship, but on the contrary was in navigation." (Footnotes omitted)

■ ■ As previously noted, there is little question here that the barge involved was in fact a vessel in navigation. The factual issue before the Court as to Count 2 is whether plaintiff, at the time he was injured, was doing work of a type traditionally done by a ship's crew. In deciding such a question, the Court must look to the entire job and not simply to that part which the plaintiff was doing. United Pilots Ass'n v. Halecki, *supra*, 358 U.S. at 618, 79 S.Ct. 517, 3 L.Ed.2d 541; McCown v. Humble Oil & Refining Company, *supra*, 405 F.2d at 598.

The facts here show quite clearly that plaintiff was not doing seaman's work on the day he was injured. Plaintiff was a construction worker and performed various tasks generally related to such employment. The fact that his employer was principally engaged in building structures in and around the waterfront would not transform the character of plaintiff's work into that of a seaman. Shipyard workers who are likewise regularly employed at water's edge have been denied recovery if their employment is not of a type traditionally done by seamen. United Pilots Ass'n v. Halecki, *supra*; McCown v. Humble Oil & Refining Co., *supra*; McQuaid v. United States, 337 F.2d 483 (3d Cir. 1964).

■ Quite obviously, seamen traditionally do not drive piles, build boat houses or construct bulkheads. Structures such as these, permanently affixed to land, are extensions of the land, even though located in or extending over navigable waters. Nacirema Operating Co., Inc. v. Johnson, 396 U.S. 212, 215, 90 S. Ct. 347, 24 L.Ed.2d 371 (1969). Work such as that being done by plaintiff is traditionally performed by shore-based construction workers who, like plaintiff, on occasion must undertake their duties from barges or other floating structures located on navigable waters. When, as in this case, the plaintiff is not performing seaman's work, he is not entitled to the warranty of seaworthiness but must look instead to his remedies under appropriate compensation laws. See Moore v. Ashland Oil and Refining Company, 322 F.Supp. 637, 640 (S.D.W.Va. 1971).

For the reasons stated, plaintiff is not entitled to invoke the admiralty jurisdiction of this Court under either Count 1 or Count 2. Judgment is accordingly entered for defendant with costs.

---

6. Although the test applied under Count 2 overlaps in part that under Count 1, the focus is somewhat different.