Elmer FEMATT, Plaintiff,

v.

NEDLLOYD LINE, a corporation, and Does I to V, inclusive, Defendants.

N. V. STOOMVAART MAATSCHAPPIJ "NEDERLAND", a corporation, Third Party Plaintiff,

v.

CITY OF LOS ANGELES, a Municipal Corporation, and San Pedro Tug Boat Co., a Corp. (aka "Redstack") a Corp., Third Party Defendants.

Civ. No. 321–59.

United States District Court
S. D. California,
Central Division.

March 2, 1961.

Magana & Olney, by Mitchell Levy, Los Angeles, Cal., for plaintiff Elmer Fematt.

Graham, James & Rolph by Reed M. Williams, Long Beach, Cal., for defendant and third-party plaintiff N. V. Stoomvaart Maatschappij "Nederland", sued herein as Nedlloyd Line.

Ekdale & Shallenberger by Gordon P. Shallenberger, San Pedro, Cal., and Roger Arnebergh, City Atty., Arthur W. Nordstrom, Asst. City Atty., Walter C. Foster, Harry D. Miller, Jr., Deputy City Attys., Los Angeles, Cal., for third-party defendant City of Los Angeles.

Manns & Manns by William Manns, Beverly Hills, Cal., for third-party defendant San Pedro Tug Boat Company.

KUNZEL, District Judge.

This matter comes up on a motion for an order allowing plaintiff to file an amended complaint bringing in new parties defendant.

Plaintiff, a citizen of California, filed this action in a California state court on February 16, 1959, against defendant owner of the vessel S. S. "Lomboc", alleging personal injuries sustained while assisting in the undocking of the vessel on December 15, 1958, from her berth in Wilmington, California.

From answers to interrogatories, it appears that plaintiff was tending the forward spring line when the line failed and struck plaintiff.

The original complaint, in addition to naming the defendant, named Does I to V and alleged that their names were unknown to plaintiff, and that when known, plaintiff would seek leave to amend the complaint. Paragraph III of the complaint alleged, "* * * the defendants, and each of them owned, operated, managed, maintained, and controlled the vessel S. S. 'Lomboc', and used and employed said vessel in the transportation of cargo for hire in interstate and foreign commerce." The

complaint further alleged, "That at said time and place, plaintiff was employed as a linesman by National Lines Bureau, and was working on the dock adjacent to said vessel. * * * " Paragraph VI alleged, " * * * the defendants and each of them were negligent and the vessel was unseaworthy in that, * *."

The defendant N. V. Stoomvaart Maatschappij "Nederland", a corporation, erroneously sued as Nedlloyd Lines, on April 8, 1959, filed a petition for removal which alleged in part, "That defendants 'Does I to V, inclusive,' herein have been fraudulently joined as defendants for the purpose of preventing removal;". This allegation was not controverted by plaintiff until January 24, 1961, and then in a memorandum filed in support of the motion to amend his complaint.

On April 15, 1959, plaintiff filed a demand for trial by jury. On May 29, 1959, plaintiff filed his first amended complaint. Does I to V did not appear in the title of the first amended complaint. In lieu thereof, the term "et al." was used. Paragraph III of the original complaint was repeated. However, the language in paragraph VI was changed to read, " * * * at said time and place, the defendant was negligent in that, * * *."

The amended complaint alleged negligence of defendant in the first count, and that the vessel was unseaworthy in the second count.

On March 15, 1960, defendant filed the third-party complaint herein under Fed.R.Civ.P. 14. It sought indemnity from City of Los Angeles and San Pedro Tug Boat Co. The third-party complaint alleges that third-party plaintiff employed the City of Los Angeles to perform the services of docking master and to direct the operation of undocking third-party plaintiff's vessel from its berth at Wilmington, California and that pursuant thereto a pilot employee of the City of Los Angeles performed the service. The third-party complaint further alleges that third-party plaintiff engaged the services of the San Pedro Tug Boat Co. to supply a tug to assist in the undocking of the vessel. The third-party complaint alleges that the injuries to plaintiff and the breaking of the forward spring line were caused by the negligence of the third-party defendants.

On July 27, 1960, plaintiff filed a notice of motion for an order permitting him to file a second amended complaint. A copy of the proposed second amended complaint attached to the notice of motion, names City of Los Angeles and San Pedro Tug Boat Co. as defendants, and also seeks to amend paragraph VI of the first amended complaint to read, " * * * the defendants and each of them were negligent in that, * * *."

If the motion to amend were granted, the case would have to be remanded to the state court for lack of diversity inasmuch as the third-party defendants sought to be named as defendants are both citizens of California.

By order of court on December 20, 1960, leave to amend was denied on the ground that the statute of limitations had run against the cause of action alleged in the proposed second amended complaint against the new defendants. This order was vacated upon the court's own motion, and the motion to file the proposed second amended complaint was re-submitted. All parties were requested to file briefs. The purpose of the re-submission was to determine whether or not the doctrine of laches applied rather than the statute of limitations.

Preliminarily, there seems to be no question that plaintiff is not in a category which would allow him to sue the vessel for unseaworthiness, pursuant to the teachings of the Supreme Court in Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099

and Pope and Talbot Co. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. These cases extended the right to sue for unseaworthiness to persons who were performing those services for the vessel which "traditionally and historically" were performed by members of the ship's crew. The services of a linesman assisting either in the docking or undocking of a vessel were never "traditionally or historically" performed by a member of a ship's crew. During the days of the sailing vessels the linesmen were known as "boatmen" who rowed out from shore to meet the ship to catch the lead lines. They were usually employed by the ship's agent or husband, and in many instances were volunteers.

■ The real question in the court's mind was whether, by reason of the language contained in the Hawn case, supra, and in Oroz v. American President Lines, 2 Cir., 1958, 259 F.2d 636, certiorari denied 1959, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572, the negligence claim of plaintiff is subject to laches rather than a statutory limitation. My conclusion is that the courts have not as yet gone so far as to hold that a maritime tort consisting of negligence is subject to laches when tried in a forum other than on the admiralty side of the district court.

■ It is plaintiff's vigorous contention that the statute of limitations has not run in favor of the new defendants sought to be named because they were originally brought into the action as fictitious parties, and that even though the use of fictitious parties in the federal courts is not recognized, the state court would hold that the statute of limitations had not run because the amendment dates back to the date of the filing of the original complaint. However, in order for the amendment to date back, the original complaint must have alleged a cause of action against the fictitious parties. Kolodzieski v.

Hover, 1954, 124 Cal.App.2d 731, 269 P.2d 163. It is patent that neither the original nor first-amended complaint alleged or attempted to allege any cause of action except as against defendant owner of the vessel, or any other person who had an interest in the vessel.

■ It is my view that the state court would hold that the causes of action sought to be alleged as against the two new defendants are barred by the California statute of limitations of one year. Cal.Code Civ.P. § 340(3).

■ The holding by the state court that the statute of limitations barred the causes of action would merely result in the case again being removed to this court; and I do not believe such a ping-pong match would be proper. In view of this, the court is exercising its discretion in denying the motion to amend in accordance with Fed.R.Civ.P. 19(b).

■ Some of the parties suggest that the court, on its own motion, could transfer this case to the admiralty side of the court, and, thereafter, allow the amendment and determine whether or not the claims are barred by laches. In view of plaintiff's choice of forum and demand for a jury trial, the court could not, on its own motion, transfer the case. To do so would nullify the "saving to suitors" clause of 28 U.S.C. § 1333 (1).

■ Assuming that plaintiff requests leave to transfer the case to the admiralty side of the court and such a request is granted, there would be no question of jurisdiction. 46 U.S.C.A. § 740; Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555, certiorari denied 1951, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343. However, assuming leave is granted to file the proposed amended complaint on the admiralty side of the court bringing in the new defendants, could the court retain jurisdiction? Inasmuch as the claim is made that the torts were committed by the defendants proposed to be added

through the vessel as an instrumentality, it is my opinion that jurisdiction could be retained.

Plaintiff's motion for leave to file the second amended complaint is hereby denied.