**Leopoldo SANDOVAL, Plaintiff,**

**and**

**Panama Canal Company, a federally chartered corporation, Plaintiff in Intervention,**

**v.**

**MITSUI SEMPAKU K. K. TOKYO, Defendant.**

**Civ. No. 2629.**

District Court, Canal Zone, Cristobal Division.

May 22, 1970.

E. J. Berger, Cristobal, Canal Zone, for plaintiff.

Dwight A. McKabney, Robert J. Park, Balboa Heights, Canal Zone, for plaintiff-in-intervention.

De Castro & Robles, Balboa, Canal Zone, for defendant.

## COURT'S RULING ON PENDING MOTIONS AND FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE QUESTION OF DAMAGES

CROWE, District Judge.

This action was originally brought in 1961 in the Supreme Court of New York in the County of New York and was dismissed on the grounds that the New York court was not a convenient forum and that the defendant accept suit in the same cause of action in the District Court for the Canal Zone. Thereafter, in July 1964, plaintiff filed a libel in personam against the defendant, Mitsui Sempaku K. K. Tokyo, in this court, alleging that the defendant was liable for damages in the amount of $100,000.-00 for personal injury, permanent disability, loss and impairment of wages

and other injuries, and $25,000.00 for maintenance and cure, which were the result of injuries sustained by the plaintiff while working aboard the defendant's vessel, the SS AKIBASAN MARU on September 10, 1960 while the vessel was entering the Pedro Miguel Locks in the Panama Canal about 10:00 p.m. on a northbound transit.

Trial was had on the issue of liability on June 28, 1967, and in findings of fact and conclusions of law dated August 22, 1968 and published in 288 F.Supp. 377 (1968) this court held that the defendant was liable to the plaintiff as a result of the injuries received.

On May 16, 1969 the Panama Canal Company, pursuant to Rule 24(a), Federal Rules of Civil Procedure, moved to intervene as plaintiff, alleging that it had been obligated to pay and has paid, pursuant to the Federal Employees Compensation Act, 5 U.S.C. § 8101–50, medical expenses and compensation to the plaintiff, Leopoldo Sandoval, in the sum of $21,731.06, as of December 7, 1968, and, further, that the intervener is also liable for further compensation and medical expenses, if any entitlement thereto should accrue, arising out of the injury.

On June 4, 1969 the court permitted the intervention of the Panama Canal Company and the filing of a third party complaint by the defendant against the Panama Canal Company and on July 2, 1969 the defendant filed its answer to the intervener's complaint and asserted a counterclaim, which was designated "Cross Complaint".

On July 14, 1969, by agreement of parties pursuant to Rule 41(a) (1) (ii) of the Federal Rules of Civil Procedure, the defendant's third party complaint against the Panama Canal Company was dismissed without prejudice.

The plaintiff in intervention, the Panama Canal Company, replied to defendant's counterclaim denying any liability to the defendant, alleging noncompliance with 2 C.Z.C. 297, 76A Stat. 25, in that no investigation was had nor a claim was laid before the Panama Canal Company before departure from the Canal Zone waters of the vessel involved and that there is no tort liability outside of the Federal Employees Compensation Act on the part of the intervener to the plaintiff.

On August 18, 1969 the plaintiff, Sandoval, filed a brief in support of his claim for damages, and on September 11, 1969, submitted Findings of Fact and Conclusions of Law herein.

The plaintiff in intervention moved for a summary judgment on defendant's counterclaim, which was designated as "Cross Complaint", on September 26, 1969, and filed an affidavit and brief in support of its motion.

On October 8, 1969 the defendant, Mitsui Sempaku K. K. Tokyo, was permitted to amend its pleadings to set out a contract of indemnity between the ship owners, which was filed on October 29, 1969, to which the Panama Canal Company, as intervener, replied with a general denial. The intervener thereupon, on January 16, 1970, filed a motion to vacate the court's interlocutory order of August 22, 1968 wherein it found that the defendant ship was liable to plaintiff, Sandoval, and requests a rehearing on the ground that operational negligence of intervener's employees cannot, as a matter of law, result in liability by either the defendant or intervener under the facts adduced at the trial, and it filed its Memorandum of Law in support of this motion.

Also, on January 16, 1970, the defendant, Mitsui Sempaku K. K. Tokyo, moved for summary judgment upon its cross complaint against the Panama Canal Company on the admissions contained in the document filed by the Company, entitled "Memorandum of Law in Support of Intervener's Motion for Summary Judgment on Defendant's Counterclaim", and upon the testimony adduced at the trial in the original hearing.

The plaintiff, Sandoval, filed his Memorandum of Law on February 24,

1970 in opposition to the motion to vacate and revise the interlocutory order of August 22, 1968. This matter, therefore, is before the court on pending motions and the question of damages to the plaintiff. The parties have agreed that the motion for summary judgment made by defendant shall not be heard until after the court's ruling on the motion to vacate the interlocutory order of August 22, 1968 determining liability. (See minutes of January 23, 1970).

A. The motion to vacate and revise the interlocutory order of liability is overruled and denied for the reason that it is believed by this court that the findings of fact and conclusions of law in that decree were sound and within the law as determined by the Supreme Court and by the decisions of the United States Court of Appeals for the Fifth Circuit.

■ This court does not deny the theory generally that the decisions of the Court of Appeals in the circuit where the district is located are binding upon the district court, but the decisions as cited by the Panama Canal Company in its brief are in no way convincing that the law regarding unseaworthiness, as decided by the Fifth Circuit, is different from that enunciated in the finding of this court on August 22, 1968.

Leading cases relative to the question in the Fifth Circuit are Antoine v. Lake Charles Stevedores, Inc., 376 F.2d 443, 5 Cir. 1967, and Robichaux v. Kerr McGee Oil Indus., Inc., 5 Cir. 1967, 376 F.2d 447.

These cases were both cited in an opinion written by Circuit Judge Simpson in the case of Luckenbach Overseas Corp. v. Usner, 413 F.2d 984, 5 Cir. 1969.

In the Antoine case it was held that operational negligence of an employee of an independent contractor, occurring at the moment of injury to the co-worker, did not render the vessel unseaworthy. It was held in that case, however, that there was no "defective equipment".

In the Robichaux opinion, which was rendered on the same date as the Antoine opinion, it was also held that "none of appellee's equipment was defective."

In the case at bar we have a different set of circumstances. It is undisputed and positively proven that the wire had a spur in it which caused the linehandler, Saayadra, who was an employee of the intervening movant and co-worker of the plaintiff, Sandoval, to "let go for a while", so that the defect in the equipment itself, and not the operational negligence of Saayadra, caused the injury.

The rule in the Fifth Circuit, as written by Judge Simpson in the Luckenbach case, seems only to hold that there will be no recovery for operational negligence on the theory of unseaworthiness if all the equipment and appurtenances aboard the ship are admittedly in a seaworthy condition.

In the case at bar, the defective condition of the cable is unquestioned.

The case of Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, and cited in the findings of August 22, 1968 by this court, involves the case of a seaman who was injured on shipboard when the staging on which he was working fell as the result of a break in "defective rope" which was being used by reason of the negligence of fellow servants of the seaman.

Negligent operation as defined in 65 C.J.S. Negligence § 1, page 463 is "the failure to use the *proper means* at hand in a proper and careful way as persons of ordinary prudence do under like conditions for their own safety." (Italics supplied.)

■ The fact that the defective cable did not belong to the defendant's ship is no defense as was decided in the findings of August 22, 1968. See Crumady v. The J. H. Sisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 and other cases cited in those findings.

It may be said in summation that probably the confusion is due to the use of the words "instantaneous unseaworth-

iness" in the August 22, 1968 findings, for actually the unseaworthiness was more than instantaneous and existed as long as the defective cable was on board.

B. The motion for summary judgment on defendant's counterclaim (designated as Cross-Complaint) set up in its answer of July 2, 1969, is sustained.

The counterclaim asks for judgment against the complainant in intervention, Panama Canal Company, sounding in tort on the grounds that the linehandler, Saayedra, was an employee of the Panama Canal Company and the defective cable was that company's property, in any amount for which a final decree may be entered against defendant in favor of plaintiff, Sandoval.

Plaintiff-in-Intervention bases its motion for summary judgment on the lack of jurisdiction of the court for failure of defendant to bring about a compliance with the provisions of 2 C.Z.C. § 297, 76A Stat. 25 in perfecting its claim.

The injury to plaintiff occurred while working on the defendant's vessel as an employee of the Panama Canal Company, in the waters of the Canal Zone, outside the locks, and the pertinent provisions of the Canal Zone Code are as follows:

"2 C.Z.C. § 292. Injuries outside locks

The Panama Canal Company shall promptly adjust and pay damages for injuries to vessels, or to the cargo, crew, or passengers of vessels which may arise by reason of their presence in the waters of the Canal Zone, other than the locks, when the injury was proximately caused by negligence or fault on the part of an officer or employee of the Company acting within the scope of his employment and in the line of his duties in connection with the operation of the canal. If the negligence or fault of the vessel, master, crew, or passengers proximately contributed to the injury, the award of damages shall be diminished in proportion to the negligence or fault attributable to the vessel, master, crew, or passengers. In the case

of a vessel which is required by or pursuant to regulations prescribed pursuant to section 1331 of this title to have a Panama Canal pilot on duty aboard, damages may not be adjusted and paid for injuries to the vessel, or its cargo, crew, or passengers, incurred while the vessel was underway and in motion, unless at the time the injuries were incurred the navigation or movement of the vessel was under the control of a Panama Canal pilot. 76A Stat. 23."

"§ 297. Investigation of accident or injury giving rise to claim

"Notwithstanding any other law, a claim may not be considered under this subchapter, or an action for damages lie thereon, unless, prior to the departure from Canal Zone waters of the vessel involved:

"(1) the investigation by the competent authorities of the accident or injury giving rise to the claim has been completed; and

"(2) the basis for the claim has been laid before the Panama Canal Company. 76A Stat. 25."

The question presented here is whether Sandoval is a member of the crew or a passenger on the defendant's ship and it is held that he was a member of the crew for the purposes of these statutes and this action and, as there is no showing of compliance with the investigation and notice provisions of the statute, the counterclaim is dismissed.

The minutes of this court of October 8, 1969 show that Sandoval was held not to be a crew member, but that is erroneous and the minutes are hereby corrected.

It is apparent from the language of the statutes that Congress fully intended that before anyone should have a claim against the Panama Canal Company, arising out of an accident or an injury occurring on a vessel while transiting the canal, that competent authorities should have an opportunity to investigate the accident or injury giving rise to the claim and the basis for the claim

must have been laid before the Panama Canal Company before departure of the vessel. The relinquishment of sovereign immunity is done by the United States Government on its own terms.

As can be seen from the language, which is broad, it provides for the adjustment and payment of damages for injuries to "vessels, or to the cargo, crew, or passengers of vessels" and although some careful draftsman might have put language in the act to indicate its applicability to persons fitting into any other category than crewmen or passengers, it is not believed such detail is necessary when considering the purpose of the statute. "The word 'crew' does not have an absolute unvarying legal significance and the concern of the court is to define the meaning for the purpose of the particular statute which must be read in the light of the mischief to be corrected and the end to be obtained." Maritime Personal Injuries, Norris, Second Edition, Sec. 9, p. 16.

As he was on board as a workman to aid in the navigation and transit of the canal, he was not a passenger and it is believed that he fits within the definition laid down in Southern Chicago Coal & Dock Company v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940) where a distinction was made between harbor workers and persons primarily on board the vessels as laborers and members of the crew who were persons primarily on board to "aid in navigation". The broad approach is well demonstrated in the following from that case:

"The word 'crew' does not have an absolutely unvarying legal significance. As Mr. Justice Story said in United States v. Winn, 3 Sumn. 209, the general sense of the word crew is 'equivalent to ship's company' which would embrace all the officers as well as the common seamen. But it was observed that the laws upon maritime subjects sometimes used the word crew in that general sense and 'sometimes in other senses, more limited and restrained.' 'It is sometimes used to comprehend all persons composing the ship's company, including the master; sometimes to comprehend the officers and common seamen, excluding the master; and sometimes to comprehend the common seamen only, excluding the master and officers.' It was therefore deemed necessary to consider the context of the particular use of the term and the object to be accomplished by the enactment under consideration. *In* The Bound Brook, 1 Cir., 146 F. 160, 164, *it was said that 'When the "crew" of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board.'* Judge Hough in The Buena Ventura, 2 Cir., 243 F. 797, 799, thought that statement was a fair summary, and in his view one who served the ship 'in her navigation' was a member of the 'crew'. Id., p. 800. See, also, Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 65 F.2d 779. Recently, in considering the application of the Jones Act to 'any seaman,' we adverted to the 'range of variation' in the use of the word 'crew', and it was again emphasized that what concerned us in that case, which had relation to the status of a 'master', was 'not the scope of the class of seamen at other times and in other contexts.' *We said that our concern there was 'to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained.'* Warner v. Goltra, 293 U.S. 155, 158, 55 S.Ct. 46, 47, 48, 79 L.Ed. 254.

"That is our concern here in construing this particular statute—the Longshoremen's and Harbor Workers' Compensation Act—with appropriate regard to its distinctive aim. We find little aid in considering the use of the term 'crew' in other statutes having other purposes. This Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable wa-

ters who, although they might be classed as seamen (International Stevedoring Co. v. Haverty [272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157], supra), were still regarded as distinct from members of a 'crew.' They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation. See De Wald v. Baltimore & Ohio R. Co., 4 Cir., 71 F.2d 810; Diomede v. Lowe, 2 Cir., 87 F.2d 296; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245." (Italics supplied).

The complainant in intervention has established that no attempt was made by the defendant to comply with the statutes and it is clear that the accident was known to the ship's officers at the time it occurred and prior to its departure from the Canal Zone waters. Further, if by some strange circumstance the defendant did not know of the injury when it happened, it certainly knew of it at the time it was served with process in the present action, but it has never asked for the investigation nor claimed it did not know of the accident at the time it occurred. If it had claimed ignorance, it was under a duty to follow the requirements of notice and claim upon knowledge as soon as "reasonably possible", and this has not been done. See Gulf Oil Corp. v. Panama Canal Co., 407 F.2d 24 (5th Cir. 1969).

■ ■ As stated by plaintiff in intervention, "exactly who qualifies as a member of a crew" for the purposes of the Jones Act (46 U.S.C. § 688) and the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 903) is a factual matter which is determined by the court on the relationship of the individual to the vessel. As stated in Norris supra, Sec. 8, page 14, "To determine whether the injured man is a seaman with Jones Act rights, the following three requirements should be answered in the affirmative: (a) the vessel be in navigation; (b) that there be a more or less permanent connection with the vessel; (c) that the worker be aboard primarily to aid in navigation."

This plaintiff was serving on board defendant's vessel for its transit through the Panama Canal, a distance of more than 35 miles. His duties were performed while the vessel was in motion, or in the locks, being lifted or lowered to other levels to permit further movement, and his duties were to prepare and handle the lines as the vessel passed through the locks of the Panama Canal.

The fact that plaintiff was not paid by the defendant, but by the Panama Canal Company, would only tend to show that he was not a crew member and would not be determinative when he was actually for a substantial time performing a skillful service on board the vessel, contributing to its operation and welfare. See Stanley v. Guy Scroggins, 297 F.2d 374 (5th Cir. 1961).

■ It is undisputed that Panama Canal Company has paid and will continue to pay to the plaintiff all the sums to which he is properly entitled under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101–8150, and this Act is the exclusive remedy available against the Panama Canal Company for those entitled to the benefits of the Act. Mills v. Panama Canal Company, 272 F.2d 37 (2d Cir. 1959); Arrufat v. Panama Canal Company, 199 F.Supp. 832 (S.D.N.Y. 1961.)

Sec. 7(b) of FECA, 5 U.S.C. § 8116(c) provides:

"The liability of the United States or an instrumentality thereof under this * * * (Act) or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or any instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality

because of the injury or death in a direct judicial proceeding, in a civil action, * * * or under a Federal tort liability statute. * * * " (Italics supplied).

■ As argued by the intervener, by operation of the exclusive liability provision of the Federal Employees Compensation Act there is no underlying tort liability of the Panama Canal Company to its employees. The Panama Canal Company is an instrumentality of the United States within the meaning of the above quoted section and this section prevents "any other person", which would include the defendant, from proceeding in a case in tort, such as the one at bar. See Murray v. United States, 405 F.2d 1361 (D.C.Cir.1968); Schwartz v. Campagnie General Transatlantique, 405 F.2d 270 (2d Cir. 1968); Maddux v. Cox, 382 F.2d 119 (8th Cir. 1967).

C. The plaintiff, Leopoldo Sandoval, has submitted findings of fact and conclusions of law supported by his brief and no opposition to the findings nor opposition brief was filed by the other parties to this action.

The following findings of fact and conclusions of law, some of which have been adopted from the findings and conclusions submitted, are therefore the findings of the court in this action.

### FINDINGS OF FACT

1. The accident which plaintiff suffered on September 10, 1960 initially caused a fracture of the right femur in the proximal one third with the fracture going into the greater trochanter; shattering of the greater trochanter and acute angulation laterally of the major femoral shaft fragments. The right leg was shorter than the left; the foot was turned in inversion and the leg was rotated laterally.

2. Treatment was performed at the Gorgas Hospital, where plaintiff remained for nearly six months (exactly 177 days).

3. Treatment, in part, consisted of placing plaintiff in skeletal traction by a Boehler Kirschner wire, which involved drilling a hole through the shin bone. A Thomas splint with a Pierson attachment was also used.

4. During the course of treatment, plaintiff developed a heel sore or ulcer which broke down and which drained pus, which required several operations, including two skin graftings. On two occasions, bone was removed from the heel bone.

5. Plaintiff developed an osteomyelitis of a portion of the os calcis and has had persistent ulcer drainage in this area to the present time and continuing.

6. Plaintiff presently walks with a right and antalgic gait which is an indication of pain in the leg. He has a ¾" calf atrophy on the right as compared with the left. He has a flexion loss of 19 degrees in the right ankle. He also is suffering from a loss of great toe extension of 20 degrees and a loss of ankle movements amounting to 11%.

7. Combining the disabilities mentioned in the preceding paragraph with the disabilities occasioned by the ulcerations, osteomyelitis and pain, I find plaintiff to have sustained, as a result of the aforementioned accident, a 20% permanent body disability.

8. Plaintiff is presently not qualified to do heavy manual labor because of his disability.

9. Plaintiff will in all likelihood need further surgery in an effort to treat the heel ulcer and will be faced with the danger of amputation of his right foot.

10. I find that plaintiff will be subject to flareups of the condition of his heel, which will cause intermittent loss of employment and will adversely affect plaintiff's future employment possibilities.

11. In addition to the 177 days of inpatient care, plaintiff has been treated

at *Gorgas* Hospital on numerous other occasions.

12. The total cost of medical attention and care for the plaintiff, to date, as a result of his injuries caused by the accident of September 10, 1960 amounts to $18,694.90.

13. Plaintiff was born on November 15, 1914 and is presently 55 years of age. An American male's life expectancy, as portrayed in the Mortality Tables, Document No. 140 and reported in Am.Jur.2d, Desk Book on Damages; Death; Evidence; page 354 is 17.40 years. As plaintiff is a citizen and resident of the Republic of Panama his life expectancy may be considerably less.

14. Plaintiff from the date of the accident to the present time has endured pain, suffering and disability. I find the fair and reasonable value of these damages to be $28,694.90.

15. Plaintiff will continue to suffer pain and disability and will have to undergo further surgery and treatment for the balance of his life expectancy, as well as face the danger of an amputation of the right foot. I find the fair and reasonable value of these damages to be $25,000.00.

16. The total amount of injury compensation received by plaintiff, repayable to his employer, Panama Canal Company, is the sum of $3,036.16.

17. The plaintiff has suffered an actual loss of wages for the period September 10, 1960 to March 31, 1969, in the sum of $3,361.02.

## CONCLUSIONS OF LAW

18. Plaintiff suffered injuries which were proximately caused by the aforementioned accident and is entitled to judgment in his favor and against the defendant in the sum of $60,092.08.

D. There is remaining still the motion for summary judgment made on January 16, 1970 by the defendant, Mitsui Sempaku K. K. Tokyo, under the theory of implied indemnity by reason of the contract of transit between the Panama Canal Company and the owner of the vessel and the amount due under the lien claimed by the Panama Canal Company against any amount recovered by the plaintiff. Judgment will not be entered by the clerk of this court under Rule 58 until these questions are decided.