**Jesse R. MOORE, Plaintiff,**

v.

**ASHLAND OIL AND REFINING COMPANY, Defendant.**

**Civ. A. No. 2641.**

United States District Court,
S. D. West Virginia,
Huntington Division.

Feb. 9, 1971.

Harry Alan Sherman, Pittsburgh, Pa., Stephen P. Meyer, Charleston, W. Va., for plaintiff.

Dickie, McCamey & Chilcote, Pittsburgh, Pa., William C. Beatty and Richard J. Bolen, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

Plaintiff brings this action for damages for personal injuries allegedly caused by the unseaworthiness of defendant's vessel. Jurisdiction is based upon diversity of citizenship and an amount in controversy in excess of $10,000, exclusive of interest and costs. The case is presently before the Court upon motion of the defendant for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The Court, having examined the pleadings, affidavits, interrogatories and answers, deposition and briefs, finds that no material factual issues are presented and that the defendant's motion for summary judgment should be granted.

## THE FACTS

1. On August 8, 1967, and at all times pertinent to this case, plaintiff was a lockman in the employ of the United States Army Corps of Engineers at Lock 18, Belpre, Ohio. In the course of his employment he was required, inter alia, to handle lock lines for vessels and barges navigating through Lock 18 for the accommodation of the pilots and crews of such vessels.

2. On August 8, 1967, while the vessels Peggy Downey and Reliable with their tow, including the barges owned by defendant, were approaching Lock 18 and while plaintiff, in pursuance of his duties, was working a lock line furnished to him by the master and crews of said vessels, the lock line broke striking plaintiff and causing him to fall to a concrete guide wall resulting in the several injuries set forth in the complaint.

3. The vessels Peggy Downey and Reliable were neither owned by, nor under charter to, nor in the control of, the defendant.

4. The Peggy Downey was owned by the Downey Towing Company; the Reliable was owned by the Reliable Towing Company.

5. On August 8, 1967, the Reliable was under a "bareboat charter" agreement with the Tennessee Towing Company, which had exclusive control and possession of, and was operating, the Reliable when the injury to plaintiff occurred. All the members of the crew of the Reliable were employees of the Tennessee Towing Company and said company issued all orders to, directed the work of, paid the wages of and had the exclusive right to and did control, the entire crew of the Reliable. All ropes, lock

lines and other equipment used in locking procedures by the Reliable on the date of injury to plaintiff, including the lock line which injured plaintiff, were owned by the Tennessee Towing Company and were parts of the equipment of the Reliable.

6. The Peggy Downey was in tow with the Reliable and its engines were not operating. None of the crew or equipment of the Peggy Downey was involved in the injury to plaintiff.

7. The defendant Ashland Oil and Refining Company owned several of the barges in tow with the Peggy Downey and the Reliable, however, none of the crew or equipment involved in the injury to plaintiff was either owned, possessed or controlled by defendant Ashland Oil and Refining Company.

8. The plaintiff was not an employee of defendant Ashland Oil and Refining Company at any time pertinent to this case.

9. While the barge which plaintiff contends was unseaworthy was owned by the defendant Ashland Oil and Refining Company, it was without motive power of its own (it being towed by the Tennessee Towing Company) and was without a master and crew.

10. The barge in question was in navigation (passing through the locks) at the time of injury to the plaintiff.

11. Plaintiff was not at the time of the injury nor at any time pertinent to this case on board the barge which he alleges was unseaworthy.

## THE ISSUES

In his complaint plaintiff originally sought relief under the Jones Act, under the doctrine of maintenance and cure, and the doctrine of unseaworthiness. He has abandoned his claim under the Jones Act and for maintenance and cure and has elected to base his claim entirely on the doctrine of unseaworthiness, alleging that when the lock line broke the barge instantly became unseaworthy.

There appear to be two issues presented by the facts in this case:

(1) Was the plaintiff in this case one to whom the warranty of seaworthiness extended, and

(2) Was the barge (owned by the defendant) a vessel which owed the warranty of seaworthiness.

## THE LAW

### I

The Fourth Circuit has stated the rule governing those to whom the warranty of seaworthiness applies in the recent case of McCown v. Humble Oil and Refining Company, 405 F.2d 596, at 597–598 (4th Cir. 1969):

"In order for a shore-based worker to recover for injuries caused by unseaworthiness, he must establish that he was doing a seaman's work *and* that at the time of his injury the vessel was not a 'dead' ship, but on the contrary was in navigation." Emphasis added.

Thus, there appear to be two conditions which a shore-based worker must meet before he is entitled to the warranty of seaworthiness: (a) he must be performing a seaman's work, and (b) the vessel must be in navigation. Having found as a matter of fact that defendant's barge was in navigation at the time plaintiff was injured, we need only concern ourselves with whether or not plaintiff was "doing a seaman's work."

The warranty of seaworthiness has been extended to include not only crew members, but also stevedores and other shore-based workers who are *aboard performing work traditionally done by seamen* and who are incurring the hazards of a seaman. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); McCown v. Humble Oil and Refining Company, supra; and Vessella v. United States, 405 F.2d 599 (4th Cir. 1969). Both parties having acknowledged that the above-mentioned principle governs in cases of this nature, all we need consider is whether plaintiff was

performing work "traditionally performed by seamen."

As stated above, plaintiff was employed by the Army Corps of Engineers. Among his duties, he was required to handle lock lines for various vessels navigating through the locks operated by his employer. He never boarded the barge in question, but merely tied off the barge when the line was thrown to him. Plaintiff has cited no case, and we have found none, which allows recovery under the doctrine of unseaworthiness for one performing the task that he was performing at the time of his injury.

Plaintiff cites the case of Sandoval v. Mitsui Sempaku K.K. Tokyo, 288 F. Supp. 377 (D. Canal Zone 1968) and subsequent opinion in 313 F.Supp. 719 (1970), in support of his contention that he was performing a seaman's task. However, this Court would distinguish this case from the case at bar on several important grounds. In the *Sandoval* case, the plaintiff worked for the Panama Canal Company and his job was to assist vessels navigating the canal. Any similarity between the *Sandoval* case and the instant case ends at this point. In *Sandoval* the Court held· that the plaintiff was a crew member during the time he was aboard the vessel going through the canal. The Court further held that during this time the plaintiff was in fact a Jones Act seaman inasmuch as (1) the vessel was in navigation, (2) there was a more or less permanent connection with the vessel, and (3) he was on board primarily to aid in navigation. The Court held that since plaintiff was a temporary crewman on board performing the work of a seaman, he was entitled to protection under the doctrine of unseaworthiness. Such is not the situation in the instant case since plaintiff has admitted that he did not qualify as a Jones Act seaman. The plaintiff in this case was never on board the vessels or barges involved, nor was there any "more or less permanent connection" between plaintiff and the barge involved in this case.

This Court is persuaded by the case of Fematt v. Nedlloyd Line, 191 F.Supp. 907 (S.D.Cal.1961), in which the Court held that plaintiff (whose job was assisting in the docking and undocking of vessels by handling various lines for the vessels) was not one to whom the warranty of seaworthiness extended. In the *Fematt* case, plaintiff was performing the same type of. job that plaintiff in this case was performing and was injured in a like manner—struck by a broken line. The Court stated in *Fematt*:

"These cases (Seas Shipping Co. v. Sieracki, supra; Pope & Talbot Co. v. Hawn, supra) extended the right to sue for unseaworthiness to persons who were performing those services for the vessel which 'traditionally and historically' were performed by members of the ship's crew. The services of a linesman assisting either in the docking or the undocking of a vessel were never 'traditionally or historically' performed by a member of a ship's crew. During the days of the sailing vessels the linesmen were known as 'boatmen' who rowed out from shore to meet the ship to catch the lead lines. They were usually employed by the ship's agent or husband, and in many instances were volunteers."

This Court finds no evidence from which it could conclude that plaintiff was performing a seaman's task. He was employed by the government at a government-owned and operated lock and dam. These locks and dams have always been operated by employees of the government and not either historically or traditionally by seamen.

When, as in this case, the plaintiff is not performing a seaman's function, there is no basis for extending the warranty of seaworthiness to him and he must look instead to his own employer for relief. McCown v. Humble Oil and Refining Company, supra; citing White v. United States, 400 F.2d 74 (4th Cir. 1968); Van Horn v. Gulf Atlantic Towing Corp., 388 F.2d 636 (4th Cir. 1968).

II .

Having determined that plaintiff was not one to whom the warranty of seaworthiness extends, it is unnecessary to determine whether or not the barge in question was a warrantor of seaworthiness, since even if we found as a matter of law that defendant's barge was a warrantor of seaworthiness, plaintiff still could not recover because he is not one to whom the warranty extends. In short, the question is academic.

Plaintiff cites several cases which hold that in cases of this nature summary judgment is not proper. However, this Court is bound by the principle laid down by the Fourth Circuit in McCown v. Humble Oil and Refining Company, supra, 405 F.2d at p. 597, wherein it is stated:

"Frequently the question of whether a shore-based worker is entitled to the warranty of seaworthiness may involve disputed facts or conflicting inferences which require submission to a jury. If, however, the facts conclusively demonstrate that the worker is not performing a traditional task of a seaman, it is error to submit the issue of unseaworthiness to a jury." Citing United N.Y. & N.J.S.H. Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S. Ct. 517, 3 L.Ed.2d 541 (1959).

The facts upon which plaintiff bases his claim are undisputed and subject to no apparent conflicting inferences which would preclude the granting of summary judgment in this case.

### JUDGMENT ORDER

For the reasons above appearing, it is hereby

Ordered that the motion of the defendant Ashland Oil and Refining Company for summary judgment be, and the same is, hereby granted, and that the plaintiff's complaint and this action be, and they are, hereby dismissed.